## MARY J. CRISP v. STATE BANK OF ROLLA, a Corporation.

(155 N. W. 78.)

**Cause — parties — theory of — trial — motion for new trial — appeal — different theory on — theory on trial — governs in supreme court.**

1. Parties cannot try their causes on one theory and when defeated on that line assume a different position on a motion for a new trial or in the appellate court, and the theory of the case which was adopted by the trial court with the acquiescence of the parties will govern in the appellate court for the purpose of review.

**Bank check — payee — name of forged in indorsement — cashed by intermediate bank — action against — by payee — trover — conversion.**

2. Where a bank check which is sent by mail is intercepted on its way, and the indorsement of the payee forged thereon, and the check cashed by an intermediary bank which in turn forwards the check to its correspondent, and through its correspondent to the drawee bank, and collects the amount thereof from such drawee bank and correspondent in order to reimburse itself for the money paid on the forged indorsement, the payee of such check may ratify the delivery to the person who intercepted the check without ratifying the forged indorsement, and may maintain an action of trover against the intermediary bank for the conversion of such check.

**Inadmissible evidence — received on the trial — error cured — withdrawal — instructions — rule as to — exception to rule — effect of must be removed — jury — new trial.**

3. There is an exception to the general rule that where inadmissible evidence

is admitted during a trial, the error of its admission is cured by its subsequent withdrawal before the trial closes and by an instruction to the jury to disregard it, and that is that where the evidence thus admitted is so impressive that. in the opinion of the appellate court, its effect was not removed from the minds of the jury by its subsequent withdrawal or by an instruction of the court to disregard it, the judgment will be reversed on account of its admission and a new trial will be granted.

**Check — payee — suit against bank — conversion — letters — self-serving declaration — res gestæ — no part of — error — instructions.**

4. Where in a suit against a bank by the payee of a check for the conversion of such check and the wrongful payment of it to the husband of such payee, and the questions at issue are whether the plaintiff ever received the check or the money, or ever authorized the indorsement of her name upon it by her husband and the payment to such husband of the amount thereof, a letter which is written to a lawyer of the plaintiff and who presumably sent the check, and which letter was written over a year after the date of the cashing of the check, and in which the plaintiff states: "I received your letter this evening, . . . and was horrified to hear that I received my money a year ago, $257.75. Pray, for God's sake, tell me to whom it was sent. I swear before God I never received one cent,"—is a self-serving declaration, and not a part of the *res gestæ*, and where such letter is read to the jury the error and prejudice of its introduction is not cured by a subsequent instruction which directs the jury to disregard it.

Opinion filed November 30, 1915.

Appeal from the District Court of Rolette County, *Buttz,* J. Action of trover for the conversion of a check. Judgment for plaintiff. Defendant appeals.

Reversed.

Statement of facts by BRUCE, J.

This is an action for the conversion by the defendant of a certain bank check which was drawn on the Stockman's National Bank of Montana, the complaint alleging that "on or about the 2d day of April, 1905, the plaintiff was the owner and lawfully entitled to the possession 'thereof,' and that *thereafter* and on or about the 2d day of May, the defendant wrongfully and unlawfully obtained possession thereof and thereupon wrongfully and unlawfully appropriated and converted the same to its own use." The answer denied generally all of the allegations of the complaint excepting

such as were admitted and qualified, its qualification being that "on or about the 22d day of April, 1905, it cashed a certain check for the plaintiff, which said certain check was referred to in plaintiff's complaint and described therein in words and figures, but the defendant alleges that said bank check was cashed for the plaintiff by the defendant at the plaintiff's special instance and request, and the money paid to the plaintiff and the plaintiff's husband, and that said bank check was indorsed and made payable to the defendant as a receipt for said money, at the plaintiff's special instance and request, by indorsement made thereon by the plaintiff's husband at the plaintiff's special instance and request, and by her authority," etc. To this answer the plaintiff replied, denying the allegation of the payment by authority, but admitting and adding "that the said Charles Crisp (the husband) indorsed said check, but such indorsement was wholly without authority from the plaintiff, and without her knowledge and consent, and without any express custom on plaintiff's part."

The plaintiff introduced evidence tending to show that the check was sent her by the administrator of her former husband's estate, but without direct authorization, and that its sending was not known to her until a year after it had been cashed by the defendant bank, and which bank was an intermediary merely, the check being drawn on the Stockman's National Bank of Montana. She claims, and the evidence tends to show, that her present husband intercepted the letter and indorsed her name thereon without her authority, and had the same cashed by the defendant bank, and that she has never received any of the proceeds thereof. Evidence, on the other hand, was introduced by the defendant bank concerning a visit by an officer of such bank to the plaintiff before the check was paid, and of her authorization of such payment. This testimony, however, was emphatically denied by the plaintiff.

The case was tried upon the theory that the only issue in the case was whether or not the payment to and indorsement by the husband was authorized by the wife. No exceptions appear to have been taken to the instructions, nor are they, with one exception, incorporated in the record, which is before us. From a judgment in favor of the plaintiff the defendant appeals.

*H. E. Plymot* and *Cowan & Adamson* and *H. S. Blood*, for appellant.

Neither possession or right to possession at time of alleged conversion is shown in plaintiff, nor is her ownership established. Nor is there shown a wrongful appropriation of the check by the bank. Parker v. First Nat. Bank, 3 N. D. 87, 54 N. W. 313; Simmons v. McConville, 19 N. D. 787, 125 N. W. 304; Hodge v. Eastern R. Co. 70 Minn. 193, 72 N. W. 1074; Ring v. Neale, 114 Mass. 111, 19 Am. Rep. 316; Glass v. Basin & B. S. Min. Co. 31 Mont. 21, 77 Pac. 302.

The check would be effective upon delivery. No delivery is shown. Marvin v. M'Cullum, 20 Johns. 228; Eastman v. Shaw, 65 N. Y. 528; King v. Fleming, 72 Ill. 21, 22 Am. Rep. 131; Woodford v. Dorwin, 3 Vt. 82, 21 Am. Dec. 573; Talbot v. Bank of Rochester, 1 Hill, 295; Garthwaite v. Bank of Tulare, 134 Cal. 237, 66 Pac. 326; Buehler v. Galt, 35 Ill. App. 225; Wright v. Ellis, 1 Handy (Ohio) 546.

Even if the check had been delivered to plaintiff she could not maintain an action against the bank to recover money paid out on her forged indorsement. Morgan v. Bank of State, 11 N. Y. 405; First Nat. Bank v. Whitman, 94 U. S. 347, 24 L. ed. 231.

Where on the trial inadmissible evidence is received over objection, and thereafter, and at the close of the case, is withdrawn, and the trial court admonishes the jury to disregard it entirely, the error of admitting it is not cured by such admonition or instruction. Where such evidence is impressive in its nature, the harm in admitting it cannot be cured or removed by any instruction from the court. Its effect still remains. Maxted v. Fowler, 94 Mich. 106, 53 N. W. 921; Boydan v. Haberstumpf, 129 Mich. 137, 88 N. W. 386; Nelson v. Spears, 16 Mont. 351, 40 Pac. 786; State Bank v. Dutton, 11 Wis. 371; Remington v. Bailey, 13 Wis. 336; Hanson v. Johnson, 141 Wis. 550, 124 N. W. 506; Armour & Co. v. Kollmeyer, 16 L.R.A.(N.S.) 1110, 88 C. C. A. 242, 161 Fed. 78; Juergens v. Thom, 39 Minn. 458, 40 N. W. 559; Whittaker v. Voorhees, 38 Kan. 71, 15 Pac. 874; Dykes v. Wyman, 67 Mich. 236, 34 N. W. 561.

The law is that delivery of commercial paper, either active or constructive, is necessary to its completion. Jones v. Deyer, 16 Ala. 221; Gordon v. Adams, 127 Ill. 223, 19 N. E. 557; Palmer v. Poor, 121 Ind. 135, 6 L.R.A. 469, 22 N. E. 984.

*Middaugh, Cuthbert, Smythe, & Hunt,* for respondent.

Where a party proceeds upon a certain well-defined theory at the trial, he cannot abandon it and adopt a new theory on his motion for a new trial or on appeal. The theory adopted and pursued at the trial must control throughout. Marshall v. Andrews, 8 N. D. 364, 79 N. W. 851; Paulson v. Ward, 4 N. D. 100, 58 N. W. 792; Wright v. Sherman, 3 S. D. 290, 17 L.R.A. 792, 52 N. W. 1093; Loomis v. LeCocq, 12 S. D. 325, 81 N. W. 633; Bidgood v. Monarch Elevator Co. 9 N. D. 632, 81 Am. St. Rep. 604, 84 N. W. 561; Valiquette v. Clark Bros. Coal Min. Co. 83 Vt. 538, 34 L.R.A.(N.S.) 440, 138 Am. St. Rep. 1104, 77 Atl. 869; William Deering & Co. v. Russell, 5 N. D. 319, 65 N. W. 691; 3 Cyc. 243; Diggs v. Way, 22 Ind. App. 617, 51 N. E. 429, 54 N. E. 412; Carroll v. Drury, 170 Ill. 571, 49 N. E. 311; Snyder v. Snyder, 142 Ill. 60, 31 N. E. 303; Middlekauff v. Zigler, 10 Kan. App. 274, 62 Pac. 729; Flaherty v. Miner, 123 N. Y. 382, 25 N. E. 418; Luckie v. Schneider, — Tex. Civ. App. —, 57 S. W. 690; 2 Cyc. 670.

Rulings by the trial court on the receiving of evidence will not be received by the supreme court unless exceptions are duly taken. Waterhouse v. Jos. Schlitz Brewing Co. 16 S. D. 592, 94 N. W. 587; State v. Harbour, 27 S. D. 42, 129 N. W. 565; Redwater Land & Canal Co. v. Jones, 27 S. D. 194, 130 N. W. 85; F. Mayer Boot & Shoe Co. v. Ferguson, 19 N. D. 496, 126 N. W. 110.

Questions not raised in the court below cannot be presented in the supreme court, especially where an attempt appears to change the theory. Marshall v. Andrews, 8 N. D. 364, 79 N. W. 851; Peteler Portable R. Mfg. Co. v. Northwestern Adamant Mfg. Co. 60 Minn. 127, 61 N. W. 1024; Broughel v. Southern New England Teleph. Co. 72 Conn. 617, 49 L.R.A. 404, 45 Atl. 435.

(This opinion is written after a rehearing).

BRUCE, J. (after stating the facts as above). The principal ground for a reversal which is urged by the defendant in this case, and which was apparently urged upon the motion for a new trial, is that the evidence does not show that the check came into the possession of the plaintiff before the time of the alleged conversion, and

that therefore the action of trover will not lie. It is contended that, no delivery having been made, the check at such time was the property of the maker, and not of plaintiff, and that the plaintiff, therefore, has no ground of complaint, as the liability of such maker to her is still existing, the debt never having been paid. This objection, however, comes too late. The case was twice tried, and the point does not appear to have been raised until the motion for a new trial was made in the second action.

The delivery of the check to the plaintiff or to her agent, and her right to the possession thereof at the time of its payment by the defendant bank, is admitted by the answer; for, although the answer denies the allegations of the complaint, "except as herein expressly admitted, qualified, or explained," it expressly alleges that the check "was cashed for the plaintiff at the plaintiff's special instance and request, and the money paid to the plaintiff or to the plaintiff's husband, and that said check was indorsed and made payable to the defendant as a receipt for said money at plaintiff's special instance and request, with indorsement made thereon by plaintiff's husband at plaintiff's special instance and request and by her authority, and that the defendant cashed said check by virtue of the authority given by the plaintiff to the plaintiff's husband to indorse said check, and to receive the money thereon for her use and benefit, and that the defendant cashed said check for the plaintiff as aforesaid in the regular course of business and under an express custom on the part of the plaintiff giving her husband authority to generally cash and indorse her checks for her and to receive the money thereon."

The question of ownership of the check, and the right to the possession thereof at the time of the alleged conversion, was and is therefore expressly eliminated from the case, and the only question at issue, and in fact the only question that was tried in the district court, was whether the husband had the right to indorse the same, that is to say, whether such indorsement was made with the consent of the wife.

It is now too late to urge that the check had not been received by the plaintiff, or that she was not entitled to the possession thereof, and that therefore the cause of action would not lie. Cushing v. Pires, 124 Cal. 663, 57 Pac. 572; McDougald v. Hulet, 132 Cal. 154, 64 Pac. 278. It is well established, indeed, that "parties cannot elect to try their

causes on one theory in the lower court, and when defeated on that line assume a different position in the appellate court" (3 Cyc. 243), and that "the theory of the case which was adopted by the trial court with the acquiescence of the parties will govern in the appellate court for the purpose of review." 21 Enc. Pl. & Pr. 664; Marshall v. Andrews, 8 N. D. 364, 79 N. W. 851.

It is also quite clear that if a delivery to the plaintiff was in fact made or must be assumed the action of trover will lie, since the defendant bank, in order to reimburse itself for the payment which was made to the husband, transmitted the check and collected the same from its correspondents, who in turn collected it from the drawee bank. So, too, it would seem that a person to whom a check is sent by mail, and which check is intercepted and cashed with a fraudulent indorsement thereon by a third party, may ratify the delivery without ratifying the forged indorsement. "This brings us to the question," says Mr. Justice Lurton, of the Supreme Court of the United States, then a member of the supreme court of Tennessee, "as to whether this check was ever delivered to the complainant; for it is insisted that if there has been no delivery to him that he has no such title to the instrument as will enable him to maintain a suit against the bank. Whether this check was sent to complainant and miscarried, and fell into the hands of a stranger, or whether it was left with the bank to be credited to the complainant, who kept his account there, and by oversight this credit was not given, is all matter of conjecture. How this check ever reached the bank we are unable, from the proof, to determine. All we can say is that we are satisfied that it never came into the hands of complainant. Someone undoubtedly received it from Muse. *By suing the bank upon this check, complainant may and does ratify the receipt of the check from Muse.* It is as if it had been received by an agent for the use and benefit of the complainant. *Omnis ralihabitio retro trahitur et mandato priori æquiparatur*—a subsequent ratification has a retrospective effect, and is equivalent to a prior command. Broom, Legal Maxims, 837. 'This is a rule,' says Mr. Broom, 'of very wide application.' . . . 'No maxim,' remarks Mr. Justice Story, 'is better settled in reason or law than this maxim; . . . at all events, where it does not prejudice the rights of strangers.' [Fleckner v. Bank of United States, 8 Wheat. 363, 5 L. ed. 637.] As illustrative of the application of the rule the

author cites the case where the goods of A are wrongfully taken and sold. The owner may either bring trover against the wrongdoer, or may elect to consider him as his agent, and adopt the sale, and bring *an action for the price.* Smith v. Hodson, 4 T. R. 211. So, in another case it was said: 'That an act done for another by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal, if subsequently ratified by him, is the known and well-established rule of law. In that case the principal is bound by the act, whether it be for his detriment or advantage, and whether it be founded on a tort or a contract, to the same extent and by and with all the consequences which follow from the same act done by his previous authority.' [Wilson v. Tumman, 6 Mann. & G. 242.] Broom, Legal Maxims, 871. The bank is not prejudiced by this subsequent ratification, for it dealt with the check as the property of the complainant, and undertook to pay to him or his order. *The effect of this ratification is simply to make the check the property of the complainant. It does not ratify the collection of the check* by one whose act in receiving it is subsequently ratified, *and agency to receive a check payable to order implies no authority to indorse it in the name of the payee,* or to collect it without such indorsement. In the case of Dodge v. National Exch. Bank, a certificate of indebtedness by the government to Dodge was remitted by mail to the paymaster for a check. The mail was robbed, and the certificate presented by the thief to the paymaster, and a check demanded. The latter, without requiring proof of the identity of the holder of the certificate, issued a check payable to Dodge or order, and took up the certificate. The indorsement of Dodge was forged and the check paid. Subsequently Dodge sued the bank and recovered, the court holding that he might ratify the taking of the check for the certificate, and sue upon it as an accepted check. 20 Ohio St. 234, 5 Am. Rep. 648. See, to same effect, Graves v. American Exch. Bank, 17 N. Y. 207. The decree of the chancellor is reversed, and judgment for complainant against the bank for the amount of the check, and interest from filing of bill, and all the cost of the cause. See Pickle v. Muse (Pickle v. People's Nat. Bank) 88 Tenn. 380, 7 L.R.A. 931, 17 Am. St. Rep. 900, 12 S. W. 919.

The cases cited by counsel for appellant, namely, Talbot v. Bank of Rochester, 1 Hill, 295; Garthwaite v. Bank of Tulare, 134 Cal. 237,

66 Pac. 326; Buehler v. Galt, 35 Ill. App. 225, 227, and National Bank v. Millard, 10 Wall. 152, 19 L. ed. 897, in no way hold to a different doctrine. In the last case the action was brought against the drawee bank, and the court merely held that a payee of a check which was intercepted before delivery could not maintain an action against the drawee bank, as there was no privity between him and the bank, the bank's contract being with the maker of the deposit merely. In the case of Buehler v. Galt, 35 Ill. App. 225, there was no proof that the check ever reached the person to whom it was mailed, and the only question at issue was whether the mailing of it constituted a delivery. The court held that the postoffice in the case was the agent of the sender, and that the debt which it was sent to pay had never been paid. In the case of Talbot v. Bank of Rochester, 1 Hill, 295, Talbot, the owner of a certificate of deposit in the bank of L. caused it to be indorsed with directions that it should be paid to W. & Co., and then transmitted to them by mail, though without their knowledge or request. It never reached W. & Co., and was stolen on its way, and their names forged upon it, after which it came into the hands of the Bank of Rochester, the defendants, in the course of business, who collected the money on it from the Bank of L., supposing themselves to be the owners. But it was held in this case that the owner of a certificate of deposit who indorses it payable to another, and sends it to him by mail and without his knowledge, retains the property in it until the indorsee receives it, and that such a one had the election either to sue the Bank of Rochester, the intermediary bank, in trover as for the conversion of the certificate, or to recover the amount in an action for money had and received. In this case, however, the indorsee of the certificate of deposit, W. & Co., asserted no right of ownership in it, and provided that one who has the right of possession may assert that right, the case is authority for just such an action as is brought in the case at bar. It holds, in short, that an intermediary bank which cashes a check on a forged indorsement, and then collects that check from the drawee bank in order to reimburse itself, *has converted that check.* We can see no reason why, if no ratification had been made, the owner or payee of the certificate of deposit would have been able to maintain an action of trover against the intermediary bank, the indorsee of such check could not do the same thing, in other words, ratify or accept the delivery, though not the forgery.

In the case of Garthwaite v. Bank of Tulare, 134 Cal. 237, 66 Pac. 326, the questions before us were not considered nor involved.

The only serious question, therefore, is whether a new trial should be ordered on account of the action of the trial court in admitting in evidence plaintiff's exhibit "C," which was unquestionably a self-serving declaration, and which was a letter sent by the plaintiff to her attorney in the West on September 24, 1906, and over a year after the cashing of the check, which was some time prior to May 2, 1905, and in which she stated that she had never received the money, and asked to whom it had been sent. There was in the case the close question of fact as to whether the payment to the husband and the indorsement by him was made with the plaintiff's consent, and this letter could not, in our opinion, have failed to have had its influence upon the jury. It is true that at the end of the trial the letter was withdrawn, and the jury was instructed to disregard it, but it was not until after the letter had been read to the jury and the poison had been administered. It is true, also, that the letter said nothing about the fact as to whether the indorsement had been authorized, but if the statements therein contained were believed by the jury, such indorsement could not have possibly been authorized, as the import of the letter clearly is that the wife knew nothing of the sending of the money. Otherwise why did she ask to whom it was sent? "I received your letter this evening," the letter states, "and was horrified to hear that I received my money a year ago, $257.75. Pray, for God's sake, tell me to whom it was sent. I swear before God I never received one cent." It is true that at the end of the trial this letter was withdrawn and the jury was instructed to disregard it. We can hardly see, however, how its prejudicial influence could at that late day have been eliminated. To authorize such a procedure in such a case, indeed, and under such a close question of facts and in the face of so apparent a prejudice, and to hold that the withdrawal of the testimony would correct the error, would be to hold that in any and every case a litigant may introduce prejudicial and self-serving declarations, read them to the jury, and then, after the poison has been instilled, correct the error by asking to have the testimony withdrawn. It is argued, we know, by counsel for the plaintiff that he subjected the cashier of the bank who had testified to obtaining the consent of the wife to the indorsement to a rigorous cross-examination, and that in such exam-

ination the witness was made to contradict himself. It is also argued that after the jury had retired they asked for a copy of this cross-examination, and that same might be read to them, and that soon after such reading they agreed upon a verdict. From this it is argued that it was the cross-examination of the cashier that was decisive of the case, and not the letter in question. Such a conclusion, however, goes too far and is hardly warranted. The cross-examination of the cashier may have decided one or two or a number of the jurymen, but we cannot presume that it decided or influenced all. We realize that the general rule is that "if inadmissible evidence has been received during a trial, the error of its admission is cured by a subsequent withdrawal before the trial closes, and by an instruction to the jury to disregard it, or even by an instruction to disregard without more, the view being taken that such an instruction is equivalent to striking the improper evidence out of the case." There is an exception to the rule, however, which is as well established as is the general rule itself, and that is that "where the evidence thus admitted is so impressive that in the opinion of the appellate court its effect is not removed from the minds of the jury by its subsequent withdrawal, or by an instruction of the court to disregard it, the judgment will be reversed on account of its admission, and a new trial will be granted." See 38 Cyc. 1441–1443; State v. McGahey, 3 N. D. 293, 55 N. W. 753; Bishop v. Chicago, M. & St. P. R. Co. 4 N. D. 536, 62 N. W. 605; Thomp. Trials, § 723; Armour & Co. v. Kollmeyer, 16 L.R.A.(N.S.) 1110, 88 C. C. A. 242, 161 Fed. 78; Hopt v. Utah, 120 U. S. 430, 30 L. ed. 708, 7 Sup. Ct. Rep. 614; Waldron v. Waldron, 156 U. S. 363, 381, 39 L. ed. 453–458, 15 Sup. Ct. Rep. 383; Throckmorton v. Holt, 180 U. S. 552–567, 45 L. ed. 663–671, 21 Sup. Ct. Rep. 474; Whittaker v. Voorhees, 38 Kan. 71, 15 Pac. 874; Tourtelotte v. Brown, 4 Colo. App. 377, 36 Pac. 73; Taylor v. Adams, 58 Mich. 187, 24 N. W. 864; Foster v. Shepherd, 258 Ill. 164, 45 L.R.A.(N.S.) 167, 101 N. E. 411, Ann. Cas. 1914B, 572; Chicago Union Traction Co. v. Arnold, 131 Ill. App. 599; Sinker v. Diggins, 76 Mich. 557, 43 N. W. 674; Wojtylak v. Kansas & T. Coal Co. 188 Mo. 260, 87 S. W. 506; Chicago, M. & St. P. R. Co. v. Newsome, 98 C. C. A. 1, 174 Fed. 394.

Nor was this error and prejudice waived by the alleged consent of counsel for the defendant to its withdrawal. The record in the case

shows that after the defendant had rested his case the plaintiff moved to withdraw the letter, and at the conclusion of the offer stated, "I do not presume you will have any objection to that," to which counsel for defendant replied, "No, I haven't any objection," and that the court then asked, "You have no objection to that?" and counsel for defendant replied, "No, I have no objection." From this it is argued that the withdrawal was consented to, and that, therefore, counsel for defendant cannot argue any prejudice. What else, we may ask, could counsel for defendant have done? If he had objected to the withdrawal of the letter, then counsel for plaintiff would no doubt have argued that he waived the error of its admission and consented to it, and in effect kept such objectionable evidence in the case against plaintiff's wishes, and that therefore he could not impute prejudice upon what might be termed invited error. Had defendant, instead of plaintiff, moved to strike out said evidence, and the motion had been granted, the granting of his motion would hardly have waived the error of its erroneous admission. How, then, can consent to its being stricken out on motion of his adversary waive the original error?

It is true that counsel for the defendant might have stated that he did not object to its withdrawal, but still insisted upon his original objection, but this would have been merely stating what the law implies. The only recourse the court then would have had would have been to dismiss the jury. We hardly, however, think that this should be insisted upon, as the jury, in spite of the erroneously admitted evidence, might have found a verdict for the objector, and in that case the expense and delay of a new trial would have been unnecessary. It is to be remembered that this motion on the part of the plaintiff to withdraw the evidence was made at the end of the case, where nothing remained but the submission to the jury, and did not occur at the beginning or in the middle of the trial. We are not unaware of the case of Furst v. Second Ave. R. Co. 72 N. Y. 542, which, upon casual reading, seems to express an *obiter* opinion different from that announced herein. But upon a close examination it will be seen that the reasoning in the main supports our holding herein. A new trial was granted because of reception of erroneous and prejudicial statements, the effect of which on the jury would not have been overcome by striking out said statements. To quote: "The *offer* of the plaintiff's counsel, if accepted, would not have

caused the jury to overlook this evidence when they came to consider the case, and it is impossible to say that it did not have some influence upon them." This is exactly our conclusion and basic reason for reversal.

Nor is there any merit in the contention that the letter was, after all, a part of the *res gestæ* and therefore admissible. It was clearly and palpably a self-serving declaration. It would be hard to imagine a more effective or dangerous one. It was written six months after the alleged payment of the check and after it should have been received. There was ample time and opportunity for reflection and a strong temptation to "the playing of a part." It was not a spontaneous utterance which was the result of the principal act. It was therefore inadmissible.

We realize, of course, that this case has been twice tried and that the proceedings have been long delayed. Such fact, however, should not be allowed to prejudice the rights of the defendant.

The judgment of the District Court is reversed and a new trial is ordered.

CHRISTIANSON, J. (dissenting). It is with reluctance that I dissent, as I know that the majority members regret as much as I do the necessity (as they see it) of ordering a new trial of this action. But the conclusion reached by them in so doing is, in my judgment, so unfortunate and so erroneous that I cannot conscientiously assent thereto.

In order to properly present my views, it is necessary to refer to, and quote from, the record regarding the admission of the letter, plaintiff's exhibit "3." The plaintiff testified that the first knowledge she had of the fact that the defendant bank had received and cashed the check was about September 16 or 19, 1906, and she fixed these dates, because on these dates she received letters from her attorney Stranahan at Fort Benton, Montana, and that, on the day after she received one of the letters, she wrote the letter exhibit "3." She testified that she wrote this letter at about the time she learned that the defendant bank had converted the check. The letter, exhibit "3," was thereupon offered in evidence, and the defendant's counsel interposed thereto the following objection: "Object to the introduction of exhibit 3 as incompetent, irrelevant, and immaterial, and on the further ground that it is not a part of the transaction in suit or a part of the *res gestæ;* and on the further ground that it does not tend to prove or disprove any issue in this case,

or any admission of liability on the part of the State Bank of Rolla to the plaintiff herein."

The record shows that before ruling on the objection, the trial court asked defendant's counsel if he had any argument or authority to submit in support of the objection. To which defendant's counsel replied that he stood on the objection,—refusing, or at least failing, to either argue the proposition or submit authority. The plaintiff's counsel, however, submitted authority; and, after examination thereof and further examination of the plaintiff for the purpose of laying a better foundation, exhibit "3" was admitted in evidence. The defendant's counsel made no detailed objection at this time, but merely stated that he renewed his former objection.

Immediately following the cross-examination of the last witness produced by defendant, exhibit "3" was withdrawn.

The record shows that, at the time of such withdrawal, the following took place:

Mr. Sennett: At this time, if the court pleases, the plaintiff withdraws the offer of exhibit 3 in evidence, and moves to strike the same out on the grounds and for the reasons as advanced by defendant's counsel, and asks the court that the jury pay no attention to exhibit 3 in arriving at their verdict in this action. I don't presume you have any objection to that?

Mr. Plymat: *No, I haven't any objection.*

The Court: You have no objection to that?

Mr. Plymat: *No, I have no objection.*

The Court: Gentlemen of the jury, you have heard this motion with reference to the letter, exhibit 3, that has been read to you here. You will pay no attention now whatever to that letter. That is out of the case. The case stands just as though that letter had never been in the case at all. Pay no attention to anything that was in the letter. It must not be considered by you at all in your deliberations in this case.

The record does not show that either party had finally rested at the time exhibit "3" was withdrawn, although as a matter of fact no evidence was offered by either side subsequent to its withdrawal.

The case was thereafter argued to the jury, and no contention is made

that any reference was made to this excluded testimony in argument. In its instructions to the jury the court said: "Now, gentlemen of the jury, there was an exhibit offered in evidence in this case, exhibit 3, being a letter written by Mrs. Crisp to her attorney, Mr. Stranahan, and afterwards this letter was stricken from the record, and it now has no place in this case, and you will not consider this letter or the contents of it in any way, shape, or manner in arriving at your verdict."

On February 10, 1913, defendant's counsel (the same attorney who conducted the trial) served notice of motion and motion for a new trial, noticed to be heard on February 28, 1913. One of the grounds of such motion was: "Error in law relative to the introduction and admission in evidence of the depositions in said cause." No specific error was assigned upon the admission of the letter exhibit "3." This motion for a new trial was apparently abandoned. Additional counsel was thereafter retained by the defendant, and a statement of case was prepared and presented for settlement, and settled by the trial judge on July 19, 1913. There were in all some fifty-nine specifications of error incorporated in the statement of case. The one relating to exhibit "3," being specification number 20, was in the following language, viz.: "Overruling defendant's objection to the introduction in evidence of plaintiff's exhibit '3.'" On July 24, 1913, defendant's counsel served upon plaintiff's counsel a notice of motion for a new trial, noticed to be heard on August 9, 1913. No specific mention was made in the papers then served of the alleged erroneous admission of exhibit "3" in evidence, but the only statement of error of law set forth in, or attached to, such notice of motion, was the following general assignment, to wit: "Errors in law occurring at the trial and excepted to by defendant being specifications of error one to fifty-nine inclusive incorporated in the statement of case."

Under the provisions of the 1913 practice act, the trial judge is required to file with all orders granting or refusing a new trial "a written memorandum concisely stating the ground on which his ruling is based." This memorandum constitutes a part of the judgment roll. Comp. Laws 1913, § 7690. The memorandum in this case is as follows: "This case has been twice tried to a jury. The first trial resulted in a disagreement and the second in a verdict for plaintiff. Mrs. Crisp was a widow and married Crisp. Her share of her first husband's estate was

sent to her by bank check from Montana. The check was cashed at the defendant bank by her husband, being indorsed in name of herself and Crisp in the handwriting of Crisp. She claims that she never authorized the signature, and that for two years she did not know that the check had been sent to her.

"The cashier of the bank swore positively at both trials that he personally went to plaintiff with the check, and that she told him the indorsement was all right, and that he should pay the check. The case was tried both times on this theory,—that the bank really had a proper indorsement. But the jury found that the plaintiff told the truth.

"This is a motion for a new trial.

"*H. E. Plymat, Cowan, Adamson, & Blood,* appear for the defendant; *L. H. Sennett, Cuthbert & Smythe,* appear for plaintiff. In this connection, however, it is only fair to state that Cowan, Adamson, & Blood had nothing to do with the trial and only appear on this motion.

"On the motion for a new trial the defendant insists for the first time that, even though the indorsement was never authorized, nevertheless there can be no recovery, because the check, having been sent by mail and having been stolen, never became her property, so that the defendant could have converted it. In other words the defendant asks this court to prolong this litigation by raising an entirely new issue on this motion for the first time,—by inference admitting the falsity of its testimony on both of the other trials. Courts, judges, and lawyers are being severly criticized, and in many instances justly so, for the delays of the law, expensive litigation, and over-indulgence in technicalities. This case is an example. The defendant's position, if sustained, would result, too, in much further litigation, circuity of action, and a multitude of suits with probably no different results,—and cannot be tolerated.

"The motion will be denied."

The memorandum decision indicates that on the motion for a new trial no particular reliance was placed on the general assignment of error, or the alleged erroneous admission of exhibit "3." Apparently the trial court's attention was not called thereto, except by the general assignment contained in the record. The point there relied on was the new theory of defense, then for the first time presented. And on this appeal practically the whole of appellant's brief is devoted to a presentation of that same proposition.

Compiled Laws 1913, § 7656, reads: "A party desiring to make a motion for new trial or to appeal from a judgment or other determination of a district court or county court with increased jurisdiction, shall serve with the notice of motion or notice of appeal, a concise statement of the errors of law he complains of, and if he claims the evidence is insufficient to support the verdict or that the evidence is of that character that the verdict should be set aside as a matter of discretion, he shall so specify. . . ."

It is apparent that under the provisions of this section, the same particularity is required in the statement of errors presented to the trial court on a motion for new trial as is required on appeal. Will this court say that in a case of appeal wherein there are over fifty different rulings excepted to on the trial, that a mere general statement referring to them collectively is a sufficient statement of the errors of law complained of? Every reason for requiring specific statements of the different errors of law complained of on appeal applies with equal force to motions for new trial.

Certainly under the present practice where all instructions are deemed excepted to, a general statement served with the notice of appeal or motion for new trial, of "errors of law in instructions to the jury," would be disregarded as insufficient. The assignment involved in this case is even more general. An examination of the assignments of error attached to the statement of case shows that the first fifty-eight of the errors assigned relate to rulings in the admission or exclusion of evidence, and the fifty-ninth assignment challenges the sufficiency of the verdict to entitle plaintiff to judgment. It is now virtually conceded that fifty-eight of the fifty-nine errors specified were without merit. They are not even considered worthy of argument, but have been waived. It is conceded that if the trial judge had taken the time to explore the record, and examined the first nineteen and the last thirty-nine of the fifty-nine errors included in such general assignment, he would have found no error.

It is elementary that every presumption is in favor of the ruling of the trial court, which must be sustained unless appellant affirmatively shows error. And in order to do so, appellant has the burden of presenting to this court a record affirmatively showing that the grounds which he now urges for a reversal were properly presented to the trial

court for determination. See Davis v. Jacobson, 13 N. D. 430, 432, 101 N. W. 314. It seems to me that the record in this case shows affirmatively that this was not done. The general assignment was insufficient to present to the trial court the specific error now relied upon. The new and valuable work, Corpus Juris, states the law on this subject to be as follows: "A general assignment of error that the court erred in admitting or excluding evidence is insufficient to present any question for review. The particular error relied upon must be specified. Speaking more specifically, the assignment must point out the particular evidence, the admission or exclusion of which is claimed to be erroneous, or such evidence must be set out in the assignment of error. If the error assigned is refusal of the court to permit a witness to answer a question, the assignment must show what answer the witness was expected to make, its materiality, and that the judge was informed thereof at the time of the ruling. So the assignments of error should state the questions or offers, the objections made thereto, and the rulings of the court thereon; and it has been held that a mere reference to the record for such information is insufficient." 3 C. J. § 1519.

"Different errors in regard to the admission or exclusion of evidence should not be joined in one assignment, for if any of the rulings complained of are correct the assignment must be overruled." 3 C. J. § 1520. See also Willoughby v. Smith, 26 N. D. 209, 144 N. W. 79; Schmidt v. Carpenter, 27 S. D. 412, 131 N. W. 723, Ann. Cas. 1913D, 296; Northern Grain Co. v. Pierce, 13 S. D. 265, 83 N. W. 256; 38 Cyc. 1405; 29 Cyc. 947, and authorities cited under note 9.

But even if the alleged error is considered, it constitutes no ground for reversal.

Appellant's counsel consented to a withdrawal of the exhibit. At the time of such consent, a motion was pending to strike the exhibit, "*upon the grounds*" of the objection formerly made by defendant's counsel. It is true, an objection once made need not be repeated, and that error in the admission of evidence is not waived by failure to move to strike such evidence. But that is not the condition here. In this case testimony was admitted over objection. Afterwards the opposing counsel conceded the merits of the objection, and in effect moved that the objection be allowed. The court's ruling in striking the exhibit was in effect based upon a stipulation of counsel. The exception on which

appellant predicates error was based upon the overruling of his objection. Can it be said that appellant's counsel manifested an intent to insist upon this exception, when he agreed without any qualification or condition that the very foundation upon which his exception rested be removed? A question of waiver is largely a question of intent. One of two things is true,—either defendant's counsel intended to waive the exception to the admission of the testimony, or he did not. If he intended to waive it, it is waived, just as effectively as if a formal stipulation had been entered into to that effect at the time. That he did not intend to rely upon such exception is manifested not only by his conduct at the time of the trial, but by the recitals in the motion for new trial served on February 10, 1913, wherein specific error is assigned on the admission of certain depositions, but no mention is made of exhibit "3." If at that time defendant's counsel had placed any reliance upon such error, it seems self-evident that it would have been specifically asserted. If defendant's counsel intended to rely upon his exception at the time the exhibit was withdrawn, the trial court was entitled to be so informed.

It seems to me that the doctrine of waiver applies with peculiar force in this case. See State v. Glass, 29 N. D. 620, 638, 151 N. W. 229. A party cannot speculate upon what answer a witness will make to a certain question. Hogen v. Klabo, 13 N. D. 319, 100 N. W. 847. Yet the conclusion reached by the majority is based upon the theory that counsel may speculate upon the answer of a jury. In order to sustain the conclusion reached by my associates, it must be found that defendant's counsel, at the time of the withdrawal of exhibit "3," had a secret intent in his mind undisclosed to the trial court. If he had any such intent, he should have expressed it and asked for the appropriate relief. He at that time received at the hands of the trial court the very relief requested, viz., the withdrawal of the exhibit, and the court's caution to the jury to disregard the evidence. If, in addition to this relief, he wanted a discharge of the jury and the impaneling of another, he should have so requested. Concededly plaintiff's counsel did not want this. He wanted to see what the jury would do first. He was willing to take his chances on the verdict, and it was only when his speculation had failed to result in a finding in his favor that complaint is made because

the trial court failed to read the secret purpose contained in counsel's mind.

The rule has been repeatedly laid down by this court that error cannot be predicated upon the trial court's failure to instruct on certain matters of law arising upon the evidence, in absence of a request for appropriate instructions. See State v. Lesh, 27 N. D. 166, 145 N. W. 829; State v. Glass, 29 N. D. 620, 151 N. W. 229, and authorities cited therein. In this case the majority hold that the trial court should have granted not only the relief agreed upon, but have gone further, and, in absence of any request, or an intimation that either party so desired, discharged the jury, and directed the impaneling of a new jury to try the case.

But I am satisfied defendant's counsel had no such intent, or secret reservation of mind. This alleged error was merely an afterthought even on the part of the additional counsel, and is, in reality, presented for the first time on this appeal. The majority opinion refers to Furst v. Second Ave. R. Co. 72 N. Y. 542. In that case incompetent evidence was admitted over objection. The plaintiff's counsel offered that the answer be stricken out, but defendant's counsel declined the proposal, and the court held that an acceptance of such proposal would have amounted to a waiver of the exception. The court said: "The plaintiff's counsel then proposed to have the answer stricken out, it appearing from the answer that it was merely matter of opinion. The defendant's counsel declined to accept this proposition, and elected to retain his exception. *The court made no ruling and gave no instruction to the jury on the subject.* The former rulings, the exceptions thereto, and the objectionable testimony, all remain in the case. The defendant's counsel had the legal right after the evidence had been admitted, in spite of his repeated objections, to insist upon his exception, and it was not his duty to waive it, as he would have done by accepting the proposal of the plaintiff's counsel." In the New York case the evidence was not withdrawn by the court. The jury was not cautioned to disregard it. The objecting counsel fairly informed the trial court and adverse party of his nonwaiver. The facts in the case at bar are diametrically opposite. Defendant's counsel consented to the withdrawal. The trial court positively and unequivocally told the jury to disregard the exhibit. Plaintiff's counsel in withdrawing the exhibit, in the presence of the jury,

conceded that the objection made by the defendant's counsel was well taken, and moved that the exhibit be withdrawn upon the grounds stated in such objection.

The majority opinion concedes the general rule that the erroneous admission of evidence is cured by its subsequent withdrawal, but holds that the case at bar falls within the exception to the rule. " 'The question,' said Durfee, Ch. J., in discussing this point, 'is, Did the withdrawal take the testimony out of the case? If it did, it is to be considered as if it had never been admitted. We think the withdrawal, being by consent of court, is to be regarded as the act of the court, and that, in contemplation of law, it purged the case absolutely of the testimony.' The conclusion was that, while it would rest within the discretion of the trial court to grant a new trial for the admission of illegal testimony subsequently withdrawn by counsel,—yet a judgment could not be reversed on exceptions for this reason." Thomp. Trials, 2d ed. § 723.

The court's instructions to the jury in the case at bar were specific and emphatic. They could not be misunderstood. This question was considered by the Supreme Court of the United States in Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. ed. 141, 10 Am. Neg. Cas. 593. The court said: "Upon the trial below, the plaintiff was allowed, against the objection of the defendant, to make proof as to his financial condition, and to show that, after being injured, his sources of income were very limited. This evidence was obviously irrelevant. The plaintiff, in view of the pleadings and evidence, was entitled to compensation, and nothing more, for such damages as he had sustained in consequence of injuries received. But the damages were not, in law, dependent in the slightest degree upon his condition as to wealth or poverty. It is manifest, however, from the record, that the learned judge who presided at the trial subsequently recognized the error committed in the admission of that testimony. After charging the jury that the measure of plaintiff's damages was the pecuniary loss sustained by him in consequence of the injuries received, and after stating the rules by which such loss should be ascertained, the court proceeded: 'But the jury should not take into consideration any evidence touching the plaintiff's pecuniary condition at the time he received the injury, because it is wholly immaterial how much a man may have accumulated up to

the time he is injured; the real question being, how much his ability to earn money in the future has been impaired.'

"Notwithstanding this emphatic direction that the jury should exclude from consideration any evidence in relation to the pecuniary condition. of the plaintiff, the contention of the defendant is that the original error was not thereby cured, and that we should assume that the jury, disregarding the court's peremptory instructions, made the poverty of the plaintiff an element in the assessment of damages; and this, although the record discloses nothing justifying the conclusion that the jury disobeyed the directions of the court. To this position we cannot assent, although we are referred to some adjudged cases which seem to announce the broad proposition that an error in the admission of evidence cannot afterwards be corrected by instructions to the jury, so as to cancel the exception taken to its admission. But such a rule would be exceedingly inconvenient in practice, and would often seriously obstruct the course of business in the courts. It cannot be sustained upon principle, or by sound reason, and is against the great weight of authority. *The charge from the court, that the jury should not consider evidence which had been improperly admitted, was equivalent to striking it out of the case. The exception to its admission fell when the error was subsequently corrected by instructions too clear and positive to be misunderstood by the jury. The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence.* Any other rule would make it necessary, in every trial, where an error in the admission of proof is committed, of which error the court becomes aware before the final submission of the case to the jury, to suspend the trial, discharge the jury, and commence anew. A rule of practice leading to such results cannot meet with approval."

Certain authorities are cited in the majority opinion to justify the conclusion reached; but in my opinion the cases cited do not support such conclusion. I will discuss the various cases cited in their order:

State v. McGahey, 3 N. D. 293, 55 N. W. 753. In this case the defendant was convicted of assault with intent to kill. A witness volunteered concededly incompetent testimony, which was stricken out.

by the court on motion, and this court held that, in the absence of a request for an instruction, no error was committed by the trial court in failing to instruct the jury to disregard such testimony.

Bishop v. Chicago, M. & St. P. R. Co. 4 N. D. 536, 62 N. W. 605. In this case plaintiff's counsel, upon cross-examination of the engineer who operated the locomotive, elicited certain testimony showing that there were no air brakes on the train, as well as the distance in which the train could have been stopped if there had been air brakes. The trial judge subsequently struck out all of this testimony on the ground that it had not been shown that the air brake was an ordinary appliance in railway management, and that, therefore, the testimony so elicited was incompetent. This court held that the error, if any, in the admission of such testimony, was cured by its withdrawal. In its opinion the court said: "There is a conflict of authority as to whether the explicit withdrawal of evidence, when done by the court in charging the jury, will operate to cure an error which may be involved in its admission. *Prima facie, and under the prevailing rule, such withdrawal does cure the error.* Thomp. Trials, §§ 723, 351, and cases cited in the notes. Also, Id. § 2354, and State v. McGahey, supra. We think no inflexible rule need be laid down in this case. In the case under consideration the verdict has ample support in the evidence, aside from the evidence relating to air brakes, which was withdrawn. We are of the opinion that under the circumstances existing in this case the admission of the evidence, followed by its subsequent withdrawal by the court, could not have operated to prejudice the substantial rights of the defendant." These are the only cases from this court cited in the majority opinion, and both cases are authority against, rather than for, the conclusion reached by the majority.

Armour & Co. v. Kollmeyer, 16 L.R.A.(N.S.) 1110, 88 C. C. A. 242, 161 Fed. 78. This was an action for personal injuries. Testimony was admitted tending to show that the injuries caused plaintiff to lose sexual power. A motion to strike such testimony because the same was "not a matter of damages, and not pleaded," was denied. At the close of the direct examination of the last witness who testified to this fact, plaintiff sought to amend his complaint by an averment stating such consequential damages. The application to amend being refused, the plaintiff moved to strike the testimony, which motion was granted,

and the trial court at the close of the trial instructed the jury to disregard the evidence so stricken. The appellate court refused to pass on the question of whether the evidence was admissible, but for the sake of the opinion conceded that the evidence so stricken was inadmissible. The court, after stating the general rule that the error in receiving inadmissible evidence is cured by its subsequent withdrawal before the trial closes, or by an instruction to the jury to disregard it, as well as the exception to the rule, said: "The case falls under the rule, rather than under the exception. The objectionable evidence was withdrawn by the plaintiff himself, and the court told the jury to disregard it before the plaintiff rested. *It was not before the jury when the case was argued to them, and at the close of the argument the court again instructed them to disregard it.* The other evidence of injury in the case was sufficient to sustain the verdict for the amount of damages which the jury found. *The jury could not have misunderstood the repeated instruction of the court to disregard the testimony here challenged, and the presumption is that they faithfully discharged their duty.*"

Hopt v. Utah, 120 U. S. 430, 30 L. ed. 708, 7 Sup. Ct. Rep. 614. In this case defendant was convicted of murder. Upon the trial a physician was permitted to testify (over objection that the same was not proper expert testimony) to the fact that the blow which caused the death of the deceased was delivered from behind and above the head of the person struck and from the left to the right. The testimony was afterwards stricken out on motion of the prosecuting attorney, and the jury instructed to disregard it. In the opinion the court said: *"If it was erroneously admitted, its subsequent withdrawal from the case, with the accompanying instruction, cured the error.* It is true, in some instances there may be such strong impressions made upon the minds of a jury by illegal and improper testimony that its subsequent withdrawal will not remove the effect caused by its admission; and in that case the original objection may avail on appeal or writ of error. But such instances are exceptional. The trial of a case is not to be suspended, the jury discharged, a new one summoned, and the evidence retaken, when an error in the admission of testimony can be corrected by its withdrawal with proper instructions from the court to disregard it. We think the present case one of that kind."

Waldron v. Waldron, 156 U. S. 361, 39 L. ed. 453, 15 Sup. Ct. Rep.

383.  This was an action for alienation of affections, wherein the plaintiff was awarded a verdict of $17,500 for the alienation of her husband's affections.   The plaintiff had obtained a divorce from her husband before the commencement of the action for alienation of affections, and one of the defenses asserted in the alienation suit was that plaintiff had no right to maintain the action, for the reason that the relation of husband and wife had ceased to exist between the plaintiff and her former husband, and that as a matter of fact her former husband was at the time of the commencement of the action for alienation of affections, the husband of the defendant.  The fact of such divorce was admitted in the pleadings, but plaintiff's counsel offered the record in the divorce action, and the same was received over objection that such record was *res inter alios,* and the plaintiff could not be permitted to make proof for herself by offering her own petition as evidence in her favor and thus disparage the character of the defendant.  The court in admitting the record repeatedly declared that it was admitted solely for the purpose of proving the fact of the divorce, and that the averments in the petition and other matters reflecting on the defendant were not to be disclosed or read to the jury.  In their argument to the jury, however, the attorneys for the plaintiff intentionally perverted the evidence so introduced, and repeated to the jury averments contained in the petition in the divorce action, and applied the evidence thus introduced in direct contravention of the rulings of the court.  In discussing this question the United States Supreme Court said:   "When the record of the divorce proceedings was offered by the plaintiff objection was made thereto, and thereupon the court admitted *it to prove the fact of the divorce alone, expressly limiting it to such purpose, and forbidding the reading or stating to the jury any of the averments found in the petition which in any way reflected upon the defendant.*  When the statute of Indiana was admitted, over objection, its introduction was allowed solely for the purpose of showing the law under which the divorce was granted.  Having thus obtained the admission of the record and the statute for qualified and restricted purposes, *plaintiff's counsel, in their closing argument to the jury, used these instruments of evidence for the general purposes of their case, repeated to the jury some of the averments in the petition which assailed the plaintiff's character, and put those allegations in juxtaposition with the statute of Indiana on the*

*subject of divorce and the testimony of certain witnesses, in order to produce the impression upon the minds of the jury that the decree of divorce had been granted on the ground of adultery between the defendant and Waldron.* Indeed, the fact is that the counsel, after referring the jury to the evidence which was not in the record, stated to them, in effect, that it established the fact, or authorized the fair inference, that the decree of divorce had been rendered on the ground of adultery with Mrs. Alexander, and therefore conclusively established the right of the plaintiff to recover in the present case. . . .

"We come now to the last contention, which is this, that, conceding misuse was made of the record and other evidence, yet, as the misuse was corrected by the final charge of the court, therefore the error was cured. *Undoubtedly it is not only the right, but the duty, of a court to correct an error arising from the erroneous admission of evidence when the error is discovered, and when such correction is made, it is equally clear that, as a general rule, the cause of reversal is thereby removed.* State v. May, 15 N. C. (4 Dev. L.) 330; Goodnow v. Hill, 125 Mass. 589; Smith v. Whitman, 6 Allen, 562; Hawes v. Gustin, 2 Allen, 406; Dillin v. People, 8 Mich. 369; Specht v. Howard, 16 Wall. 564, 21 L. ed. 348. There is an exception, however, to this general rule, by virtue of which the curative effect of the correction, in any particular instance, depends upon whether or not, considering the whole case and its particular circumstances, the error committed appears to have been of so serious a nature that it must have affected the minds of the jury despite the correction by the court. . . .

"The case here, we think, comes within the exception. *The charge made in the complaint was a very grave one, seriously affecting the character of the defendant below. The record, which was admitted for a limited purpose, had no tendency to establish her guilt of that charge, if used only for the object for which it was allowed to be introduced.* This is also true of the Indiana statute, and of the other testimony relating to the divorce proceeding. The admission of the record and other testimony having been ˌthus obtained, in the closing argument for plaintiff, all the restrictions imposed by the court were transgressed, and the evidence was used by counsel in order to accomplish the very purpose for which its use had been forbidden at the time of its admission.

"Indeed, when the statements made by plaintiff's counsel in opening

are considered, it seems clear that the failure to obtain the admission of the divorce proceedings in full left the case in such a condition that much of the subsequent testimony introduced, while it proved nothing intrinsically, was well adapted to fortify unlawful statements which might thereafter be made in reference to those proceedings. *Thus the case in its entire aspect was seemingly conducted in such a manner as to render the illegal use of evidence possible, and to cause the harmful consequences arising therefrom to permeate the whole record and render the verdict erroneous.* Our conviction in this regard is fortified by the fact that, although the unauthorized use of the evidence occurred in the final argument of the counsel for plaintiff, who first addressed the jury, and was then and there objected to and exception reserved, the same line of argument, in an aggravated form, was resorted to by the counsel who followed in closing the case. Indeed, the language of this counsel invited the jury to disregard the finding of the court, by looking beneath the facts which were lawfully in evidence."

Throckmorton v. Holt, 180 U. S. 552, 45 L. ed. 663, 21 Sup. Ct. Rep. 474. In this case certain opinion evidence was offered as to the genuineness of the testator's signature, based in whole or in part upon the composition of the paper, the expressions contained in it, and the legal or literary attainments of the testator. The court subsequently, in its instructions, instructed the jury to disregard any opinions as to the genuineness of the testator's signature in so far as the same were based upon anything but the handwriting of the instrument; and that opinions based in whole or in part upon the composition or the expressions contained in the papers, or the legal or literary attainments of the testator, were withdrawn from the consideration of the jury, but that all other evidence admitted in the case bearing upon the legal attainments and literary style of the testator remained as competent evidence for the consideration of the jury along with the other evidence in the case bearing upon the questions of the genuineness of the papers. The court held that the particular instructions under the facts in that case did not cure the error in the admission of such testimony. In deciding the case, however, the court uses certain language which clearly differentiates that case from the case at bar, and in effect makes the case an authority against the conclusion reached by the majority in this case. The court said: *"There may also be a defect in the language of the at-*

32 N. D.—19.

*tempted withdrawal, whether it was sufficiently definite to clearly identify the portion to be withdrawn.* This evidence was regarded upon the trial as of considerable importance. The question of its admissibility was raised in the early stages of the trial, and the evidence was excluded. It was again raised while the case was with the contestants and the evidence admitted at their instance, and several witnesses sworn in regard to it. After that an effort was made on the part of the proponents to give testimony in their favor on this question, and it was refused as not rebutting in its character. It is not a case, therefore, of the introduction of merely irrelevant evidence, such as was stated in Pennsylvania Co. v. Roy, 102 U. S. 452, 26 L. ed. 142, 10 Am. Neg. Cas. 593; nor like the case of Hopt v. Utah, 120 U. S. 430, 30 L. ed. 708, 7 Sup. Ct. Rep. 614, *where the testimony of a single witness, a physician, as to the direction from which the blow was delivered,* had been admitted, and where it was held that if it had been erroneously admitted, its subsequent withdrawal from the case with the accompanying instructions cured the error. *That was a plain question of evidence on a single point, and on the part of one witness only.*

"*Here was a case where several witnesses gave opinions in regard to the handwriting in the disputed paper,* based upon their knowledge of the handwriting of Judge Holt, and also based upon their familiarity with his legal attainments and with his characteristics of style and composition, while others based their opinions upon handwriting only. *Which were the witnesses that based their opinions partly upon both foundations, the jury could not be expected to accurately recall after a long trial lasting several weeks. Nevertheless it was called upon to separate and cast aside that portion of the evidence which had been based upon such facts, and, after excluding that evidence, determine as to the value of the remaining opinions based upon knowledge of handwriting only.* It is at least questionable whether the case does not come within the exception to the rule by reason of the possible impression produced upon the jury during the long trial, in which the evidence of several witnesses upon this point was given after much opposition and long argument as to its admissibility."

Whittaker v. Voorhees, 38 Kan. 71, 15 Pac. 874. This was an action for conversion, and incompetent testimony regarding declarations of plaintiff's vendor was admitted over objection. The trial court after-

wards instructed the jury to disregard such evidence. The appellate court refused to order a new trial for the alleged error, and affirmed the judgment.

Tourtelotte v. Brown, 4 Colo. App. 377, 36 Pac. 73. This case involved a promissory note. The question at issue was whether the note was genuine or forged. The maker of the note was dead, and the note was presented as a claim against the maker's estate. Upon the trial of the case, the court admitted in evidence the transcript of the testimony of a witness, Stipes. This testimony tended to prove the note a forgery. This testimony was given by Stipes in a different proceeding, to which the plaintiff was not a party. The appellate court held that the erroneous admission of this testimony was not cured by its subsequent withdrawal. The instructions to the jury were not nearly as emphatic as those in the case at bar. The testimony offered was that of a witness who did not testify upon the trial. It pretended to be Stipes's sworn version of the matter given upon a judicial proceeding.

Taylor v. Adams, 58 Mich. 187, 24 N. W. 864. This was an action for personal injuries received by plaintiff at the hands of defendant and his servants in forcibly ejecting her from a dwelling house. Testimony was erroneously admitted showing that defendant had and exhibited a revolver, to prevent other persons from entering the building. The revolver did not enter into the assault involved in the action, and at the time of its admission the trial court stated as a reason for its admission that "it tends to characterize and throw light upon the transaction." The incident did not occur in presence of the plaintiff. The court in holding that the subsequent withdrawal of this testimony did not cure the error in its admission, among other things, said: "It not unfrequently occurs that the real facts in the case raising the vital questions upon which the determination of the rights of the parties depend are completely obscured before the jury by the introduction of testimony of a sensational character, accompanied by explanatory statements of counsel which have no proper place in the proceedings."

Foster v. Shepherd, 258 Ill. 164, 45 L.R.A.(N.S.) 167, 101 N. E. 411, Ann. Cas. 1914B, 572. This was an action for damages for wrongfully causing the death of plaintiff's husband. Plaintiff recovered a verdict for $7,750. The defendant claimed that he shot and killed the deceased, believing in good faith that the deceased was about to com-

mit a burglary upon defendant's residence. In the language of the Illinois court, plaintiff's whole case "was predicated upon the theory that the deceased was on his way from his store to his mother's residence, where he expected to spend the night, at the time he was killed, and any proof made which tended to bear upon that question is of vital importance." One Drake was called, and over specific objection was permitted to testify that the deceased was to spend the night with his mother. Drake's former answers indicated that his conclusions were based on hearsay. Defendant's counsel made specific objection on the ground that the question called for a conclusion and a conversation, and requested that before the witness be permitted to answer such questions, it be shown whether the witness had secured his information through a conversation. The objection was overruled, and the request denied, and the witness permitted to testify. On cross-examination it was shown that Drake's testimony was based on what he claimed the deceased had told him in a conversation a considerable time before the shooting. Drake's testimony, together with the testimony of the deceased's mother as to his custom to come to her house when his wife was away, was the only evidence on this vital subject. In holding that the admission of the incompetent evidence was not cured by its subsequent withdrawal, the court mentioned the fact *that only general instructions to the jury were given to disregard the stricken testimony.* The court, also, held that the record affirmatively showed that plaintiff's counsel was guilty of deception and bad faith in introducing the testimony of Drake. The court said: "The fact that this testimony was apparently elicited by counsel for defendant in error with the full knowledge that it was incompetent and must therefore be stricken adds to the gravity of the situation. This case was hotly contested. Able counsel were employed on either side, and this was the second time the case had been tried. There is every indication that the most careful and skilful preparation had been made on both sides for the trial. It is improbable that the witness Drake was called to the stand and interrogated on this subject without a full knowledge on the part of counsel for the defendant in error as to the subjects concerning which he would testify and the source of his information. The manner in which the questions were framed, the fact that counsel themselves refrained from making the preliminary examination suggested, the promptness with which they

agreed that the testimony should be stricken, all indicate a knowledge of the situation. The whole circumstance leads one to the conclusion that it was the purpose of counsel to get this incompetent statement before the jury and to secure the benefit of the impression it would make, even though it must be immediately stricken from the record." Even in this case, however, two members of the court dissented, the dissenting members contending that the error in the admission of Drake's testimony was cured by striking the same.

Chicago Union Traction Co. v. Arnold, 131 Ill. App. 599. This was an action for personal injuries. The jury returned a verdict for $10,000 from which Mrs. Arnold remitted $6,000, and judgment was thereupon rendered for $4,000. "Against the objection of appellant Dr. McGregor was permitted to testify that appellee suffered from womb trouble, that an operation of her pelvic organs disclosed that she had retroversion and inflammation of the womb. This testimony was admitted upon the theory that this condition of her female organ was directly attributable to the accident as its proximate cause. This was entirely without foundation in fact, and after the testimony in relation thereto was before the jury, on motion of appellant at the close of the evidence for appellee, with the acquiescence of appellee, it was stricken out."

There is nothing in the opinion to indicate that the court cautioned the jury to disregard the testimony. As its reason for holding that the striking out of this evidence did not cure the error in its admission, the court said: "The largeness of the verdict and the remittitur of 60 per cent of it by appellee is cogent, and, as near as can be, conclusive evidence to this court that the jury were influenced to the detriment of appellant by its temporary admission, that though the evidence in form was stricken from the record, it still remained in the minds of the jury and unduly influenced them in their verdict."

Sinker v. Diggins, 76 Mich. 557, 43 N. W. 674. This was an action to recover the unpaid balance of the purchase price for a certain sawmill. The defendants sought to recoup damages for certain defects in the mill. They were permitted to introduce evidence as to certain speculative damages, tending to show large damages. It was conceded the damages could not be recovered, and that the evidence tending to prove them should have been excluded. The evidence was not stricken

out or withdrawn, but in its general instructions the court, after re-
ferring to the damages in question, said: "But, in any event, gentle-
men, you need not be troubled with this part of the case, and you need
not consider it." In considering the question of whether this instruc-
tion cured the error, the court said: "It is evident that no such dam-
ages could be recovered, and it was error to admit the testimony, which
was not cured by the withdrawal of it *by the general charge of the court.*
Here was a claim presented that the defendants, or McIntyre, in whose
shoes they stood, had been furnished with a mill in such a defective
condition and so worthless that the more lumber he cut, and the longer
he continued its use, the greater damages he sustained. This idea
found lodgment in the minds of the jury, and that it may have been
wholly removed from their minds by the court withdrawing that part of
the case from them we cannot say. *It may have had some influence in
reducing a claim of over $1,300 to $76.26."*

Wojtylak v. Kansas & T. Coal Co. 188 Mo. 260. This was an action
for personal injuries, occasioned by the falling of the roof of the mining
room in which plaintiff was employed. A large verdict was returned.
Regarding the evidence introduced, and the court's reasons for holding
that the error in admission thereof was not cured by its subsequent
withdrawal, the court said: "Thus plaintiff was permitted to prove
that three quarters of an hour after the accident occurred some of the
fellow workmen of the plaintiff were so enraged at the pit boss 'that they
wanted to lick him for sending plaintiff in there,' which is the expres-
sion used by one of the counsel in putting one of the questions, and 'that
Jim was going to fight with Tom about it,' which was used in putting
another question, and also to prove that one of the workmen said to the
pit boss, 'See now what you get for telling him to go to work.' After
having gotten this damaging testimony before the jury, both in the
questions of the counsel and by the answers of the witnesses, the counsel
offered to withdraw the statement made by the witness, and then the
stenographer was required to read it in full to the court in the presence
of the jury. . . . *In view of the very large verdict obtained by the
plaintiff,* we are much impressed with the fact that this evidence con-
tributed in no small degree to the amount of the verdict. There is
every probability of the jury having been influenced by it. *While it*

*may not of itself have been a reversible error,* the manner of getting it before the jury must be considered unfair practice."

Chicago, M. & St. P. R. Co. v. Newsome, 98 C. C. A. 1, 174 Fed. 394. This was an action for personal injuries resulting to plaintiff from his ejection from defendant's train. I quote from the opinion: "Against the objection of the defendant the trial court allowed plaintiff to read in evidence as part of his case the testimony of one Eckfeldt, given at the preceding trial. Eckfeldt had promised to be present at the last trial,. but failed to appear, and his testimony was read from the stenographic notes of the reporter. This was error. (Citing cases.) Later, it having been discovered that, under the statutes regulating the mode of proof in actions at law in the courts of the United States, the evidence was not admissible, plaintiff asked the court to withdraw it from the jury; *but defendant asked that a mistrial be declared, and that the case be tried to another jury.* The court denied defendant's request, and directed the jury to disregard the evidence and to consider the case as if it had not been given. Of this action the defendant complains. . . . The testimony of Eckfeldt covers 37 pages of the record, and it bore upon the important and vital issues touching the conduct of the plaintiff and the brakeman whose acts are alleged to have given rise to the cause of action. The plaintiff, Eckfeldt, and another witness, all of whom were trespassers riding on the train without lawful right, testified substantially to the same facts, and upon their testimony the plaintiff's case practically depended. The evidence improperly admitted was not confined to some particular fact, circumstance, or feature that was brought distinctly and clearly to the attention of the jury; but it was only identified by the court by the naming of the witness. It was so voluminous and so interwoven and connected with the mass of plaintiff's evidence as to be incapable of adequate separation, and we think it was impossible for the jury, however, desirous of obeying the direction of the court, to escape entirely the influence of it."

I shall not attempt to further discuss or distinguish the cases cited in the majority opinion. Obviously they do not support the conclusion reached by my associates. Nor do I believe that any well-considered authority can be found supporting such conclusion. While innumerable authorities may be cited to the contrary, see, 12 Enc. Ev. pp. 212, 215; 38 Cyc. 1440.

In the case at bar the only question was whether the plaintiff authorized her husband to indorse and cash the check. Chard, the cashier of the bank, swore positively that he went to see the plaintiff with the check, and that she informed him the indorsement was all right. The plaintiff denied this conversation. The only question in issue was whether this conversation took place. The plaintiff claimed she did not know the check had been cashed until about two years thereafter, and, as already stated, she fixed the date when she first received such knowledge as about the date that exhibit "3" was written. The letter injected no new issue into the lawsuit. It was merely Mrs. Crisp's written words,—not under oath. It added nothing to what Mrs. Crisp had already related under oath. It did not form part of the conversation in dispute. It was complete in itself. It could easily be separated from the rest of the evidence.

In order to sustain the conclusion reached by the majority, it must be said that the jury wilfully and intentionally violated their oaths as jurors, and in defiance of the court's instructions considered exhibit "3" as evidence, in spite of the fact that plaintiff's counsel in open court conceded that the objections of the defendant's counsel thereto were well taken; and in spite of the fact that the court at the time of the withdrawal, and in its instructions specifically and unequivocally told the jury that exhibit "3" was not evidence and must be disregarded. Jurors are presumed to be men of intelligence, and certainly they must be presumed to have sufficient intelligence to understand these instructions; and if they did, then, in order to sustain the conclusion reached by the majority, it must be said that they wilfully and intentionally violated their oaths as jurors and considered as evidence that which they had been specifically informed was not evidence. I do not believe that this court is justified in so finding. The record indicates deliberation on the part of the jury, and consideration of the testimony bearing on the real point in issue.

The conclusion reached by the majority is in direct conflict with the rules applied in determining the qualifications of jurors. A man who has formed an impression as to the merits of the case, gathered from newspaper reports, general rumors, or even general conversations with persons claiming to know the facts, is not thereby disqualified to serve as a juror, if it satisfactorily appears to the court that notwithstanding

such impression he can, and will, fairly and impartially try the case on the testimony adduced and the court's instructions. 24 Cyc. 290 et seq.; State v. Ekanger, 8 N. D. 559, 80 N. W. 482. In State v. Ekanger, supra, this court speaking through Chief Justice Bartholomew said: "The shades and degrees of intelligence and candor are as numerous as the individuals, and the trial judge before whom the party appears, and who may himself examine the juror, and note all his mental characteristics, is the person best qualified to determine whether or not the juror can fairly and impartially try the case on the evidence notwithstanding any impression he may have." The same identical reasoning applies in this case. The trial judge saw these jurors; he saw and heard the witnesses. His judgment as to whether the juror violated his instructions, and whether the ends of justice required a new trial, is necessarily more likely to be correct than that of the members of this court who have only the cold, lifeless paper record before them.

In my opinion the judgment and order appealed from should be affirmed.