SINKER, DAVIS & CO. v. FRED A. DIGGINS ET AL.

*Pleading—Recoupment—Contract for sale of saw-mill—Breach— Measure of damages—Charge to jury—Evidence.*

1. A notice of recoupment must be sufficiently certain to apprise the plaintiff of the *nature* of the defendant's claim, and must specify the *breaches* of the contract complained of. The notice in this case is held sufficient under this rule.

2. Where manufacturers contracted to deliver a saw-mill of a certain sawing capacity per day if properly operated, and failed so to do, the measure of damages is the difference between the value of the mill furnished and the contract price of the one agreed to be delivered.

3. In an action of trover for the value of property which the plaintiff claims to hold for the balance of the purchase price, which is evidenced by the vendee's notes containing a condition for the

retention of title in the vendor until the notes are paid, the vendee can recoup his damages growing out of the contract for the sale of the property.

4. Where a mill-owner constructed the foundation of his building according to the plans furnished by the vendor of a saw-mill to be placed therein, he may recoup, in a suit for the purchase price of the mill, the expense of raising the floor of his building to accommodate said saw-mill, such rebuilding being rendered necessary through the negligence and error of said vendor.

5. The error of the court in admitting *incompetent* testimony on the measure of damages is held not to have been cured by the instruction to the jury to disregard it in their deliberations.

Error to Wexford. (Ramsdell, J., presiding.) Argued June 11, 1889. Decided October 18, 1889.

Trover. Plaintiff brings error. Reversed. The facts, and points of counsel passed upon by the Court, are stated in the opinion.

*Pratt & Davis,* for appellant.

*E. E. Haskins,* for defendants.

LONG, J. On September 8, 1885, a contract was closed between Mr. D. E. McIntyre, of Cadillac, this State, and the plaintiff, a corporation residing and doing business at Indianapolis, Indiana, under the following letters:

"CADILLAC, MICH., Sept. 5, 1885.
"MESSRS. SINKER, DAVIS & CO.,
         "Indianapolis, Ind.

"*Gents:* I have concluded to purchase one of your Gold Dust mills, 8 ft. wheels, as shown me by your Mr. Davis. I think you had better send one of your men here at once to look my mill over, so I may know just what changes to make in order to have everything ready to put your mill in when it comes. You told me when I was at your office you could get the mill out in three weeks. I will buy your mill on the following conditions:

"You shall guarantee the mill to cut 25,000 feet of lumber per day, and do the work well. You shall also furnish

me a competent man to keep my saws in order, and to run the mill, as I would not give one cent for the mill unless I had a competent person to manage it. As I understand, you are to furnish the mill for $1,700; one-third cash, balance 4 and 8 months. Of course I shall expect you to furnish the mill as soon as possible, as I have a lot of logs I want cut before the lake closes up. I want a No. 1 mill in every respect. Please let me hear from you at once.

"Yours truly,
"D. E. McIntyre."

"Indianapolis, September 8, 1885.
"D. E. McIntyre, Esq.,
"Cadillac, Mich.

"*Dear Sir:* We are duly in receipt of your favor of the fifth inst. ordering band mill, for which accept our thanks. Will send one of our men in a few days to look over your plant, so all will be in readiness when mill arrives. This man will start about Monday next, as he will not be through with the mill he is placing until then; but this delay will not lose you any time, as the mill will be the last thing ready.

"Will make the shipment within time agreed when you were here; probably sooner. We understand you want rope feed and bicycle wheel, 8 ft., price $1,700. This is without carriage and head-blocks, you using your old ones.

"Yours truly,
"Sinker, Davis & Co."

It appears that shortly after the receipt of this letter from plaintiff by Mr. McIntyre the plaintiff sent a blue print for foundation of the mill, and a man to superintend the construction of foundation for setting the mill. Some difficulty was experienced in the setting of the mill, which is conceded to have been due to a mistake in the draft made by plaintiff.

The mill was put in operation and run by Mr. McIntyre in his business until sometime in 1887, when it was transferred to the defendants in this suit. On May 9, 1888, Mr. McIntyre also made the following assignment to the defendants:

"For a valuable consideration to me in hand paid, I hereby sell, assign, and transfer to F. A. Diggins & Co. any right of action I may have on covenant of warranty broken, and all

other counter-claims, as against Sinker, Davis' & Co., of Indianapolis, Ind., and made and given by Sinker, Davis & Co. to me on one certain Sinker, Davis & Co. band saw-mill, heretofore, on Sept. 8, 1885, purchased by me from them under warranty in said contract contained.

"D. E. McINTYRE."

It appears that two notes were given by Mr. McIntyre at the time of the purchase for the balance of the mill, $400 being paid down. These notes becoming due, the plaintiff made demand of payment of the notes, and also a demand upon the defendants for surrender of the property. The defendants refused payment of the notes, and also refused to surrender the mill.

This action is trover for the value of the property, which plaintiff claims to hold for balance of purchase price, the defendants having purchased from McIntyre with full knowledge that the property had not been fully paid for, and that the title of the property was to remain in plaintiff until the amount of the notes and interest was paid.

In this suit defendants only claim to stand in the shoes of Mr. McIntyre relative to the whole contract. On the trial the plaintiff had judgment for $76.26, and removed the case to this Court by writ of error.

While the record is quite voluminous, the issues presented are few.

The plaintiff upon the trial claimed to recover the unpaid balance upon the notes, amounting to the sum of $1,133.32, including interest to date of trial.

The defendants gave notice of recoupment under their plea, claiming in their notice:

1. To stand under the contract in the place of D. E. McIntyre.

2. Notice of non-fulfillment of contract by plaintiff in not furnishing a No. 1 mill, complete in all its parts, and capable of cutting 25,000 feet of hard wood lumber from logs in each day of 10 hours.

3. That, by reason of failure of the mill to cut the amount agreed, defendants sustained damages.

4. Claim of damages for money expended in strengthening and completing machinery.

5. Claim for damages in not furnishing a skilled man to operate the mill.

On the trial plaintiff introduced the notes in evidence, showing the amount remaining unpaid, and that the sale was a conditional one; also the demand of payment, and for the property, and the refusal of the defendants of payment or surrender of the property; also the value of the mill.

The defendants were permitted to give evidence, under the objection of plaintiff's counsel, of the expense of changing the bed of the building to accommodate the mill; the value of the mill, on the basis of 10,000 feet, which it was shown was all the mill would cut in a day of 10 hours, as compared to the value of a mill that would cut 25,000 feet, and were also permitted to show the expense of cutting lumber in a mill that would cut 25,000 feet a day, as compared with the expense of cutting lumber in a mill that only cut 10,000 feet per-day. The issues thus made were submitted to the jury under the charge of the court.

The court charged the jury:

"If you find that the plaintiff agreed to deliver a mill to Mr. McIntyre that would cut 25,000 feet of lumber per day, in a good and workman-like manner, with the ordinary skill necessary to run a saw-mill of that kind,   *   *   *   and you find that such a mill was not furnished, but that a different mill was furnished, then the defendants are entitled to recoup the difference in value between the mill furnished and the one agreed to be furnished; taking the value of the mill agreed to be furnished at $1,700, the price agreed upon in the contract."

Plaintiff's counsel contend that the court was in error in this part of the charge, for the reason that the notice of recoupment under the plea is not sufficiently specific to advise the plaintiff of the measure of defendants' claim of

damages, and that the notice does not specify the breaches of the contract complained of.

The notice avers that the plaintiff agreed to furnish an improved band saw-mill, complete in all its parts, with eight-foot wheels, and of a capacity to cut 25,000 feet of hard wood lumber in good workman-like and marketable manner from the logs, in a day of 10 hours, and of sufficient strength and weight in all its parts to be a serviceable mill for the manu-facture of 25,000 feet of hard wood lumber in good and workman-like and marketable manner from the logs, in a day of 10 hours, and that plaintiff did not furnish a mill with eight-foot wheels, complete in all its parts, of a capacity to cut 25,000 feet of hard wood lumber in a day of 10 hours, or in any length of time, but that the machine furnished did not nor would not cut hard wood or any kind of lumber in good and workman-like and marketable manner, but, on the contrary, did cut a large quantity of logs of D. E. McIn-tyre, of the value of $500, into bad and unmarketable lum-ber, etc., and that said machinery was weak, light, and incomplete in its parts, and that said McIntyre was put to great costs and expense in strengthening and completing the said weak and incomplete parts; to his great damage, etc.

It is well settled that the notice of recoupment must be sufficiently certain to apprise the plaintiff of the nature of the defendants' claim, and specify the breaches of the con-tract complained of. We do not see how the plaintiff can claim to have been taken by surprise on the trial as to the defendants' claim, either in assigning breaches of the con-tract, or in their claim of damages.

We think the notice sufficiently specific, and the measure of damages laid down by the court in that part of his charge, under the circumstances, was correct.

The court also charged the jury that the defendants might recoup damages for the expense of raising the floor to accom-modate the mill. In this there was no error. It appears

that Mr. McIntyre constructed the foundation of the mill under blue prints and plans furnished by plaintiff, and it was through their fault or negligence that the error and expenses of rebuilding was incurred, and for which they were justly liable.

There was no claim made in the court below, and none is made here, but that, if McIntyre could have had his action for these damages against the plaintiff, the defendants could recoup them in the same degree in the present action, if damages could be recouped in this form of action, and the notice of recoupment sufficient. There can be no doubt that in the form of action damages can be recouped, and, the notice being sufficient to warrant the charge, the case upon this point was fairly submitted to the jury.

The court charged the jury further:

"Defendants claim a certain other matter of damages, and this is where much of the difficulty in this case has occurred. They claim that by reason of this defective mill    *    *    * Mr. McIntyre was unable to cut the amount of lumber that it was necessary for him to cut in order to fulfill certain contracts, and to save certain stock he then had on hand. They claim he was unable to run the mill and cut the stock out, and that therefore he retained the mill for that purpose, *    *    * suffering great loss; and they have offered evidence to show that the loss upon each thousand feet was $1.75 on an average cut of the mill of 10,000 feet per day; that about 4,000,000 feet was cut in the mill; and that a loss of $1.75 per thousand feet would make the total sum of $7,000 as the loss sustained by Mr. McIntyre by reason of the defect in the mill.    *    *    * But in any event, gentlemen, you need not be troubled with this part of the case, and you need not consider it."

The court had, however, permitted the defendants to give evidence of such damages; and though the court, in his general charge, withdrew this part of the case from the consideration of the jury, we cannot say what effect or influence it may have had upon the verdict. It is evident that no such damages could be recovered, and it was error to admit the

testimony, which was not cured by the withdrawal of it by
the general charge of the court.   Here was a claim presented
that the defendants, or McIntyre, in whose shoes they stood,
had been furnished with a mill in such a defective condi-
tion and so worthless that the more lumber he cut, and the
longer he continued its use, the greater damages he sus-
tained.   This idea found lodgment in the minds of the jury,
and that it may have been wholly removed from their minds
by the court withdrawing that part of the case from them we
cannot say.   It may have had some influence in reducing a
claim of over $1,300 to $76.26.

We need not discuss the several assignments of error in
their order.   Aside from the questions already discussed, the
case was very fairly presented to the jury under the charge of
the court; but, for the errors pointed out, the judgment of
the court below must be reversed, with costs, and a new
trial ordered.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., con-
curred.   MORSE, J., did not sit.