## J. A. FAY & EGAN CO. *v.* CUMMER MANUFACTURING CO.

1. SALES—BREACH OF WARRANTY—RETURN OF PROPERTY—WAIVER —ACCEPTANCE.

    *Held,* in a suit for the balance of the price of a multiple crate slat molder, that plaintiff, under disputed evidence, did not waive a written proviso in the contract of purchase that defendant should not retain the machine more than 30 days if not satisfactory and such retention would amount to an acceptance.

2. SAME—RETURN.

    And mere notice of defendant's dissatisfaction or of defects would not relieve the party from complying with such requirement and condition.

3. SAME—WARRANTY.

    *Held,* also, that the evidence sufficiently established that the seller orally warranted that the machine would continue to work satisfactorily and if it did not he would see that it did.

4. SAME—NOTICE—PLEADING.

    Notice with defendant's plea that it would rely on a waiver of the provision relating to retention of the machine more than 30 days by subsequent promises and agreements, sufficiently advised plaintiff that after the making of the sale, but before delivery, plaintiff agreed that it should work properly or he would make it all right.

5. SAME—DAMAGES.

    Where the lower court did not find the value of the machine sold or any of the items of damage, except one, a judgment for defendant for much more than the item found was not supported by sufficient evidence, the evidence not showing what the machine was worth.

6. SAME—PROFITS.

    And anticipated profits or possible losses from the operation of the machine, being speculative and uncertain, were not recoverable.

7. SAME—MEASURE OF DAMAGES.

    The damages should have been based on the difference between the value of the machine that was furnished and the contract price of the one it was agreed to be delivered.

Error to Wexford; Lamb, J. Submitted October 19, 1915. (Docket No. 162.) Decided March 30, 1916.

Assumpsit by J. A. Fay & Egan Company, a foreign corporation, against the Cummer Manufacturing Company, a corporation, for balance of purchase price of a certain machine, before the court without a jury. Judgment for defendant. Plaintiff brings error. Reversed.

*Gaffney, Miltner & Millington,* for appellant.

*A. W. Penny,* for appellee.

STEERE, J. This action was brought to recover a balance of $222.86 claimed due from defendant upon the purchase price of a certain machine called a "multiple crate slat molder," sold it by plaintiff under a written contract entered into between the parties on March 19, 1913. Plaintiff is a corporation located at Cincinnati, Ohio, engaged in the manufacture of woodworking machinery, and defendant is a corporation owning and operating a factory located at Cadillac, Mich., engaged in the manufacture of products of wood, including crate slats, and, presumably, crates, although the record refrains from disclosing the latter fact, except as it may be inferred from the statement of defendant's president that: "When our business is up to capacity we can use over 200,000 [slats] a day." The agreed price of the machine with specified extras was $1,310, of which $710 was paid in advance, the balance in three payments of $200 each in two, four, and six months with 6 per cent. interest. The contract, which was preceded by considerable correspondence between the parties, initiated by plaintiff, is in the form of an accepted order given by defendant, which was prepared by plaintiff at Cincinnati. The word "we" is used in it loosely to represent whichever corporation the writer may have had in mind, but

counsel do not disagree as to which is to be inferred. So far as material, it is as follows:

"March 13, 1913.

"J. A. FAY & EGAN CO.,
    "Cincinnati, Ohio:

"Subject to strikes, accidents, or other delays beyond your control, please ship in good order the following machinery, delivered f. o. b. Cincinnati, Ohio, about May 1, 1913:   One No. 353 multiple crate slat molder complete with upper and lower slotted heads, middle box on upper spindle to be 8 inch fitted with bits and with one separate arbor carrying 16 saws for dividing the boards and with countershaft.   *   *   *

"We [plaintiff] warrant the machine to be free from defects in material, and if any part of it breaks from defects that show a flaw within five years, we will replace it with a new part.   That it will make your sample slats, in a first-class manner, at about 50 feet per minute, and 15 of them at one time, and to do this continuously, provided it is kept in proper condition and is properly operated.   This machine to be of our latest type.   For which we [defendant] agree to pay within the time stated below thirteen hundred and ten dollars.   *   *   *

"The above-described property shall be kept and used at Cadillac, in Wexford county, State of Michigan, and it is agreed that title to said property shall remain in J. A. Fay & Egan Company until fully paid for in cash; that in case of rejection the undersigned will promptly deliver it to the consignor f. o. b. Cincinnati, Ohio, that this contract is not modified or added to by any agreement not expressly stated herein, and that a retention of the property forwarded, after thirty days from its arrival at destination, shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the consignor, and a fulfillment of all its contracts of warranty express or implied.   It is further agreed that the purchaser shall keep the property fully insured for the benefit of the J. A. Fay & Egan Company; that said machinery shall not become a fixture to any realty on account of being annexed thereto, and in case default is made in the payment of one or more of the

aforesaid notes or sums of money this contract shall at the option of J. A. Fay & Egan Company be forfeited and determined, and all payments theretofore made shall be forfeited as compensation for use of said machinery and as liquidated damages, and J. A. Fay & Egan Company shall have the right to take away said machinery."

Plaintiff declared generally upon the common counts in assumpsit with a special count for the balance claimed yet due on the contract.

Defendant, under a plea of general issue, gave special notice of a counterclaim by way of recoupment with damages itemized to the amount of $1,200, and further notice of various matters of special defense stated at length, relating chiefly to claimed defects and failure of the machine to do the work for which it was designed, alleging, among other things:

"That prior to and upon the execution of said contract said plaintiff was fully informed of the character and kind of service for which said machine was purchased, and expressly agreed that the warranty reading in part as follows: 'That it will make your sample slats in first-class manner at about 50 per minute, and 15 of them at one time, and to do this continuously, provided it is kept in proper condition and is properly operated'—should operate and remain in force continuously during the reasonable life of the machine, and it was agreed that the word 'continuously' should be construed to have such meaning and intent. That the provision in the printed portion of said agreement that a retention of the machine for 30 days should constitute a fulfillment of warranty was by agreement of the parties to have no force and effect, and superseded by the word 'continuously' contained therein, and, if that the same had any significance to plaintiff, it waived the same by its subsequent promises and covenants and doings here enumerated."

The case was tried before the court without a jury. Findings of fact with conclusions of law thereon were made by the court, and a judgment was rendered in

favor of defendant for the sum of $875, under its claim of recoupment.

Plaintiff's assignments of error as urged and argued by its counsel and stated in their briefs are that the court erred:

(1) In admitting the testimony of what occurred prior to and contemporaneous with the contract to vary or alter its provisions; (2) in receiving evidence of what occurred after the execution of the contract because of failure of the defendant to give notice therefor; and (3) in its findings of law and facts because based upon incompetent testimony and without authority of law.

The following portion of the court's finding of facts and conclusions of law will serve to an understanding of the issues and the subjects to which plaintiff's assignments of error relate:

"(4) The machine was not constructed and delivered within the time stated in the contract, and was delivered to the defendant company somewhere between the first and middle of July, 1913.

"(5) After the contract had been executed and the machine was in process of construction H. H. Cummer, president of the defendant company, was at the plaintiff's plant; saw the machine in process of construction. He went over the matter with Mr. Egan, of the plaintiff company; told him that the machine was too light. Mr. Egan, in consideration of the desire of the plaintiff to overcome the prejudice of the defendant against the J. A. Fay & Egan Company machines, told Mr. Cummer to retain the machine when delivered and not return it, and that the plaintiff company would make it conform to the guaranty in the contract for and during the life of the machine.

"(6) This machine was considered by both the contracting parties to be a machine made to order for special work incident to defendant's business, and was not considered as a standard or stock machine. The preliminary correspondence shows that the plaintiff would not make the machine unless half of the amount was paid down before trial of the machine.

"(7) On the 29th day of July, 1913, after the machine had been received and set up, the defendant informed the plaintiff that there had been a mistake made in the construction of the machine, in this, that the cones in the countershaft were out of line with the feed cones on the machine, and that the machine could not be operated in that way. Either by reason of faulty design or error in construction, it became necessary to set the countershaft out of alignment with the feed shaft between two and three inches in order to take advantage of the different speeds on the machine. If the countershaft was set in alignment with the feed shaft, the frame of the machine interfered with the belt. If set out of alignment, the machine can be worked on the different speeds, but at the expense of the belt connecting the two pulleys that are working out of alignment and at cross-purposes.

"(8) After some correspondence about the matter the plaintiff on the 8th day of September, 1913, sent its Mr. Frost to adjust the machine and get it working to the entire satisfaction of the defendant. To get the machine to run Mr. Frost had to and did place the countershaft out of line with the shaft on the machine some two or three inches. As so adjusted, the machine would work, but soon ruined the belt running from the pulley on the countershaft to the pulley on the feed shaft. Nor was this difficulty obviated by the use of a narrower belt, as suggested by Mr. Frost. A narrow belt was tried after Mr. Frost left, but it would still climb on the flange, and the result was a ruined belt.

"(9) At no time has the machine worked to the satisfaction of the defendant, nor has it at any time even approximated the amount of work that it was guaranteed to do. When adjusted to cut seven-eighths inch slats, the outfeed would not work, and could not be adjusted to work on the thinner stock. Some parts of the machine proved too light by construction to stand the strain when put to the test, showing that the objection raised by Cummer in his interview with Mr. Egan while the machine was in process of manufacture was well taken. These, along with other matters, were called to the attention of the plaintiff, but no effort has been made to remedy them or any of them.

"(10) From the very first the defendant has maintained that there is a mechanical defect in either the design or the construction of this machine, which makes it necessary to adjust the countershaft out of alignment with the feed shaft, and this has caused the most of the trouble and has kept the parties from getting together. The plaintiff has as persistently maintained that the design is correct, and that the machine was built accordingly, and that there is no mechanical defect in the construction of the machine. From the testimony submitted the court is satisfied that the design was faulty to begin with, or that the construction does not follow the design, and, further, that the necessity' for the adjustment of the countershaft out of alignment with the feed shaft is but a makeshift to overcome the inevitable result of such faulty design or error in construction.

"(11) The defendant, on receiving the machine, set it up in accordance with the blueprint furnished by the plaintiff. It was tried, and would not work satisfactorily. It was left in the same condition until Mr. Frost came.

"(12) The defendant has kept the machine, and has never offered to return it to the plaintiff; neither has the plaintiff offered to correct the mechanical defect in the design or construction of the machine; nor has the plaintiff done or offered to do anything to make the machine work, except what Mr. Frost did on September 9, 1913.

"(13) From time to time, and on its own initiative, the defendant has put in some new parts, had others remilled and replaced, and put in new and heavier parts where those on the original machine were not right or were too light, and did all this without putting it up to the plaintiff, and without making any request to the plaintiff to do the same or any part of it.

"(14) The machine was set up and operated by competent men and under competent supervision. Mr. Cummer is a natural mechanic, and has' invented, designed, manufactured, and operated machinery and mechanical devices for upwards of 30 years. This machine was set up and operated under his general supervision.

"(15) If the plaintiff is entitled to recover as per

the terms of the contract, there is due and unpaid the sum of $222.86.

"(16) The value of the work and materials and new parts put on the machine by the defendant is $233.

"CONCLUSIONS OF LAW.

"(1) The written agreement between the parties contains all the essential elements of a contract, and must govern their rights, unless the provisions of the contract, or some of them, have been waived or changed by subsequent agreement or by conduct inconsistent with the express conditions thereof. In my judgment, there is no ambiguity in the conditions of the contract as made on March 19, 1913, and that it clearly expresses the minds of the parties at that time. The word 'continuously,' as therein used, has a well-defined meaning, and in the connection in which it is found in the contract under consideration, if it has any purpose there at all, it means that that part of the warranty was intended to continue during the reasonable life of the machine. No testimony of what took place between the parties prior to or contemporaneously with the making of the contract was admissible to vary, change, or explain the meaning of the terms and conditions thereof.

"(2) In view of the conversations, correspondence, and conduct of the parties subsequent to the making of the contract, I am satisfied that the plaintiff company waived its right to insist on the 30-day limit. Before the 30 days were up the defendant notified the plaintiff that there had been an error made in the design or construction of the machine, and that it could not be run in that way. The main question that has been uppermost all the way through was right here raised. It was put up to the plaintiff to make it right. The testimony in this connection brings this case plainly within the decision of the Supreme Court of this State in *Randall* v. *J. A. Fay & Egan Co.,* 158 Mich. 630, (123 N. W. 574)."

Early in the progress of the trial it was suggested by the court, on the occasion of an objection to certain proposed evidence, that the testimony be taken subject to objections offered, and "the court, after considering the law, determine the admissibility of it afterwards

in his findings," to which counsel agreed with the understanding that exceptions to adverse rulings were also reserved.

In its conclusions of law the court held inadmissible all testimony of "what took place between the parties prior to or contemporaneous with the making of the written contract" to change, or explain, the meaning of its terms or conditions, and found that it contained the essential elements of a contract which must control and govern the rights of the parties, unless its provisions, or some of them, were subsequently changed or waived by mutual agreement or conduct.

At the time of the trial, in April, 1915, defendant still had the machine, and, as defendant's president, Mr. Cummer, testified, was running it with a 4½-inch belt. If the written agreement governed, the retention of the machine by defendant longer than 30 days after receiving it in Cadillac, during the early part of July, 1913, constituted a trial and acceptance, and "a conclusive admission of the truth of all representations made by or for the consignor, and a fulfillment of all its contracts of warranty express or implied." The only conduct of waiver of this provision suggested in the finding of the court, or that we discover in the testimony, is the sending of Mr. Frost to Cadillac in September, 1913, to adjust the machine and put it in working order; but the conditions under which he was sent negative a waiver. In response to defendant's complaint by letter that the machine did not work satisfactorily and request that plaintiff "send a man who understands the machine to investigate it and set it going properly," plaintiff replied on August 22, 1913:

"If you will go over the contract that we have with you, you will see that it says nothing about the guaranteeing of the erection of the machine.  *  *  *

"We, of course, will take pleasure in having one of our experts come up to your city and show you how

to set it up, adjust it, and run it, if you desire, but, as this is entirely foreign to our contract, we would expect you to stand all of his expenses connected with such a trip, namely, hotel expense, railroad fare, and six dollars per day for the expert from the time he leaves our works until he returns."

And on September 8th, in reply to a letter from defendant of September 5th:

"To set aside any doubt that the machine is not perfect and to avoid any further arguments, we are tonight sending our Mr. Frost to Cadillac to readjust your machine, and as outlined in ours of the 3d inst. * * * We know Mr. Frost will promptly put your machine back to where it was when it left our works, * * * and we believe he will give your operators some instructions that will be well worth the cost of the expense to you."

Neither do we find anything by plaintiff in the rather protracted and controversial correspondence between the parties subsequent to the written agreement waiving its right to insist upon the 30-day limit, or consenting to any change in the terms of that contract. On the contrary, plaintiff persistently maintained, as found by the trial court, that the machine was not mechanically defective, and contended that it was correctly designed, built, inspected, and tested out before shipping, with the same care as like machines which had proved satisfactory elsewhere, and, if installed according to the blueprints furnished for that purpose, it would operate efficiently in the work for which it was intended; and that by retaining the machine beyond the 30 days allowed to examine and test it out defendant had accepted it under the terms of their contract.

The well-settled rule, supported by abundant authority in this State and elsewhere, that notice of dissatisfaction or defects will not relieve a purchaser

from returning the property within the contracted time, is thus stated in 35 Cyc. p. 437:

"The contract of warranty may, however, provide that, if the article fails to fulfill the warranty, it shall be returned to the seller, and in such case the condition is part of the warranty, and must be complied with, and the fact that within the time stipulated notice of dissatisfaction is given will not relieve the buyer from the conditions of the contract. The condition may be that the article shall be deemed to fulfill the warranty unless returned within a specified time. Under such conditions, if the buyer retains the goods, he cannot avail himself of the breach, either in an action for damages or by way of recoupment or counterclaim."

Unless the written contract entered into between the parties was subsequently abrogated or changed by an oral agreement, it is controlling, and, under the undisputed facts, defendant is precluded from making the defense to which this record is chiefly devoted by reason of having retained and continued to use this machine after expiration of the 30 days given to test and accept or reject it.

In its findings of fact the court found that a subsequent oral agreement was made which opened the door for the defense allowed. It is urged that this finding is not sustained by any competent evidence, and the court's conclusions on that proposition are erroneous both in fact and law. The finding is based upon the testimony of Mr. Cummer, defendant's president, who was permitted, against plaintiff's objection, to testify that he was in Cincinnati about the last of May, 1913, and while there was shown the machine by Mr. Egan, plaintiff's president, it having been then built, but not completed ready for shipment. Of the interview he testified in part:

"I said, 'Mr. Egan, the machine is too light to do the work that you say it will do'; and I said, 'I am not satisfied with that machine under the contract.' He

says, 'You can take my word for it; there is no fear.'
'You need have no fear about this machine doing the
work regardless of the contract,' he said, 'whether it
is 30 or 60 days; it makes no difference.  The Fay &
Egan Company is behind that machine and will make
it satisfactory.'

"Q. Did he tell you how long they would continue
to make that machine satisfactory to you?

"A. He said during the life of the machine.  He
said, 'If anything goes wrong with the machine, and
it does not work satisfactorily, if you will only let us
know, we will make it right; we will make it work.'
He said, 'We want to overcome your prejudices against
the Fay & Egan Company; we want your business,
and we are going to stand behind this machine.'  He
says, 'You need have no fear; keep the machine, and
we will see to it that it does give you satisfaction
and do the work intended for it.'   *   *   *   And he
said not to run it if it was not satisfactory, but to
notify them."

It is contended in the supplemental brief of plain-
tiff's counsel that defendant's notice under its plea was
not sufficient to entitle it to this testimony, but, on
the contrary, was misleading in the particular that it
gave notice of reliance upon evidence of facts occurring
"prior to and upon the execution of said contract," as
stated in said notice.  Considering that portion of the
notice standing by itself, there may be some force in
this contention, but later in the same paragraph, re-
ferring to the 30-day provision, it is stated:

"If the same had any significance to plaintiff, it
waived the same by its subsequent promises and cove-
nants and doings herein enumerated."

When the testimony of Cummer was offered, and
shown to relate to a time subsequent to the written
contract, it was not objected to because of insufficiency
of notice, but "as incompetent and immaterial for the
reason that the argument [agreement] between these
parties is shown by the contract"; and, upon counsel

for defendant stating it was to show that a previous contract in regard to the 30 days was entirely waived by the conversation, as a further reason it was stated that a different contract subsequently made "would not be binding unless it rested upon a different consideration." The testimony was admissible to support defendant's claim of waiver, and it was for the trial court to pass upon the credibility of the witness.

Although strongly controverted in many particulars, we think the material findings of the court touching the defense to plaintiff's action has evidential support in the testimony introduced, and they therefore will not be disturbed by this court.

But as to defendant's affirmative claim of recoupment, sufficient facts do not appear in the findings to sustain a judgment in its favor for the amount awarded. The only item of defendant's damages definitely found and stated in amount which appears in the findings of facts is $233 for work, material, and new parts put in the machine on defendant's initiative and "without notice to plaintiff." In connection with this the court declined to find that the machine had no value, and says:

"It is conceded that the work the machine will do is reasonably satisfactory work. The trouble lies in the want of capacity."

Beyond some discussion of its capacity compared with the warranty of capacity, from which it is found to have "some value," the court makes no definite finding of the actual value of the machine, and its conclusions of law end as follows:

"Having in mind, then, the present value of the machine as near as it can be determined from what testimony we have upon which to work, and also the elements of damages suffered by the defendant, I am satisfied that, after off-setting the amount still due and unpaid on the contract against the defendant com-

pany, the defendant is entitled to a judgment for the sum of $875 against the plaintiff."

Defendant's items of recoupment as stated in its special notice are:

"(a) The difference in the actual value of the machine and as warranted, $1,310; (b) damages suffered by reason of delay in delivering the machine contracted for, $300; (c) cost of labor and expense incurred in attempting to set up and operate said machine, $100; (d, value of belts, machinery, and supplies ruined, $100; (e) cost of replacing defective parts and rebuilding said machine, $100; (f) loss accruing during the period of attempt to operate machine, resulting from want of capacity of machine, $600."

The "period of attempting to operate the machine" appears to have been yet continuing at the time of the trial. Anticipated profits or possible losses from its operation are uncertain, speculative, and not a subject of recoupment.

It is manifest that some of the items sought to be recovered by defendant are not proper subjects of recoupment. Which "elements of damage suffered by defendant" went into the judgment is not disclosed. This was a piece of mill machinery, personal property. Defendant kept and continued to use it. The general rule as to measure of damages in such cases is the difference between the real and represented worth—the difference between the value of the machine furnished and the contract price of the one agreed to be delivered. *Sinker, Davis & Co.* v. *Diggins*, 76 Mich. 557 (43 N. W. 674); *Hitchcock* v. *Hunt*, 28 Conn. 343.

The judgment in favor of defendant for the sum awarded is not sustained by the findings, and is therefore reversed, with a new trial granted.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.