**RUGGLES et al. v. BUFFALO FOUNDRY & MACH. CO.**

Circuit Court of Appeals, Sixth Circuit.
June 30, 1928.

No. 4894.

**1. Damages ⬤⇒22—"General damages" are those naturally following breach of contract, whereas "special damages" are those that ensue because of special circumstances.**

Distinction between general and special damages is not that one is, and the other is not, the direct and proximate consequence of breach complained of; but "general damages" are such as naturally and ordinarily follow breach of contract, whereas "special damages" are those that ensue, not necessarily or ordinarily, but because of special circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Damages; Special Damages.]

**2. Sales ⬤⇒418(16)—Seller, not furnishing evaporator promptly, was not liable for amount buyer would have saved by operating evaporator with another one, where contract provided seller was not liable for special damages.**

Where sales contract provided that seller of brine evaporator should not be liable for special damages, seller, failing to furnish evaporator parts promptly, was not liable for damages in amount buyer would have saved in fuel by operating evaporator with another evaporator, since seller was not chargeable with knowledge it would be so operated, where there was no uniform practice to operate evaporators in sets, and there was no other evaporator on buyer's premises when contract was made, and circumstances were not usual circumstances attending sale of evaporator, and could only cause special damage.

**3. Sales ⬤⇒176(3)—Notice of breach of sales contract a year after breach was too late to enable buyer to recover (Uniform Sales Act Mich. § 49).**

Under Uniform Sales Act Mich. § 49 (Comp. Laws 1915, § 11880), notice of breach of sales contract in not furnishing parts of brine evaporator promptly, given several months after evaporator was finally accepted, and more than year after breach, in response to demand for payment of balance of purchase price, was too late to enable buyer to recover, since notice of breach must be given within reasonable time.

**4. Sales ⬤⇒360(2)—In action for purchase price, buyer held entitled to return unsatisfactory goods and recover payment in accordance with offer to return and acceptance.**

In action for purchase price of brine evaporator, brine purifier, and other articles, where brine purifier did not work satisfactorily, and seller had offered to take it back, and buyer had accepted offer, and purifier was never returned, but action of neither party had put the other in default, offer to return and its acceptance must be treated as effective, and buyer was entitled to recover amount paid on purifier and return same.

**5. Sales ⬤⇒360(2)—In action for purchase price, buyers held entitled to credit for part of equipment not furnished as required.**

In action for purchase price of brine evaporator and other articles, where preheater was part of equipment to be furnished under evaporator contract, but was not furnished, and price of purifier was reduced accordingly, but purifier contract was rescinded, buyer held entitled to credit for price of preheater on balance due on purchase price of evaporator.

In Error to the District Court of the United States for the Western District of Michigan; Fred M. Raymond, Judge.

Action by the Buffalo Foundry & Machine Company against Charles F. Ruggles and another, copartners doing business as Ruggles & Rademaker, in which defendants sought to recoup damages. Plaintiff recovered judgment, and part of sum demanded was allowed defendants in recoupment, and defendants bring error. Affirmed conditionally.

L. W. Harrington, of Grand Rapids, Mich. (Norris, McPherson, Harrington & Waer, of Grand Rapids, Mich.; on the brief), for plaintiffs in error.

John Lord O'Brian of Buffalo, N. Y. (Knappen, Uhl & Bryant, of Grand Rapids, Mich., on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. Defendant in error, plaintiff below, recovered a judg-

ment on a directed verdict against defendants below, Ruggles & Rademaker, for the unpaid balance of the contract price of a brine evaporator, the unpaid balance of the contract price of a brine purifier, and the purchase price of certain pumps, gauges and glasses, amounting, with interest, to $23,492.96. Defendants admitted that these several balances were correct but sought to recoup against plaintiff $18,250 in damages for failure to furnish the evaporator within the time specified in the contract, $9,315.70 paid on the purifier prior to its rejection for failure to comply with warranties, the purchase price of $2,760 for a preheater, which was not furnished, but was included in the contract price for the evaporator, and $1,233.66 expended by them for labor and material, at the plaintiff's request. Of these amounts claimed in recoupment, only $1,168.33 of the last-mentioned item was allowed.

The questions before us relate to the contracts for the evaporator and purifier. The pertinent provisions in the contract for the evaporator are: Plaintiff was to furnish for $65,736, f. o. b. cars at Manistee, Mich., all devices and materials necessary to construct a complete, single-effect evaporating plant; shipment of these materials from plaintiff's plant was to be completed by April 20, 1923; defendants were to pay each month 75 per cent. of the purchase price of the material shipped during the preceding month, the balance to be paid upon the operation of the evaporator in accordance with the terms of the contract. Plaintiff guaranteed that, when operated as a quadruple effect, having 8,800 square feet of service in each effect, the evaporator would produce 320 tons of salt in 22 hours, provided a certain minimum of steam was maintained in the steam chest of the first effect; it agreed to replace all material which should prove defective when shipped, but its liability for damages caused by defective parts was limited to repairs or replacement; in no event was it to be responsible or held liable for any loss, damage, detention, or delay caused by abnormal manufacturing conditions, or any other cause beyond its control, nor for any special, indirect, or consequential damages whatever; and its liability for failure for any reason to fulfill its guaranties, as covered by the contract, was limited to accepting a return of the machinery and refunding payments made thereon, in addition to the actual cost of dismantling and removal.

Shipments of some of the parts for the evaporator were made before April 20, 1923, the date by which all shipments were to be completed, but the final shipment was not made until August 30, 1923. As the shipments came in defendants accepted them and used them in erecting the evaporator. The construction was completed about December 18, 1923, but upon a test being made at that time, it was found that the evaporator did not function properly. There is a dispute as to the cause of this lack of proper functioning, the plaintiff claiming that it was due to poor construction work of the defendants. At any rate, plaintiff proceeded at its own expense to change the structure; and in July of 1924 the changes were completed and the evaporator put into successful operation. No question has since been made as to its efficiency.

There is a conflict in the evidence as to what caused the delay in erecting the evaporator, but we assume, for present purposes, that it was caused by plaintiff's failure to complete the shipment of parts within the time fixed by the contract. We also assume that, if all shipments had been made prior to April 20th, the evaporator could have been erected promptly and operated in connection with an evaporator purchased from the Manistee Iron Works, and the two would have produced the same quantity of salt that the Manistee evaporator alone produced, but would have produced it at a saving of $18,250 in fuel. This presents two questions: First, whether this loss claimed by defendants was general or special damages; and, second, whether under the Uniform Sales Act of Michigan (Comp. Laws 1915, § 11832 et seq.) the defendants have waived their right to claim these damages by failing to notify plaintiff of the breach of the contract within a reasonable time after it occurred.

[1] The contract provided that plaintiff should not be liable for special damages. Defendants admit that this provision is binding upon them, but say that the damages claimed are general and not special. The distinction between general and special damages is not that one is and the other is not the direct and proximate consequence of the breach complained of, but that general damages are such as naturally and ordinarily follow the breach, whereas special damages are those that ensue, not necessarily or ordinarily, but because of special circumstances. Lawrence v. Porter, 63 F. 62 (6 C. C. A.); Lillard v. Warehouse Co. (6 C. C. A.) 134 F. 168; Howard Supply Co. v. Wells (6 C. C. A.) 176 F. 512.

[2] Defendant's contention is that, as it was known among those who were familiar with

salt manufacturing that evaporators were often operated in sets, and that when so operated salt could be produced more economically than by operating the evaporators singly, damages in the form of increased expense for fuel must be regarded as a natural and ordinary result of the delay in shipping the parts. The argument assumes, quite authoritatively, we think, that it was the usual practice to operate evaporators in sets; and it further assumes that plaintiff ought to have known that certain conditions existed, or would exist, when in fact they did not exist, and were only brought into existence as and when defendants chose. The plaintiff was not bound to know that defendants contemplated operating the evaporator with another evaporator, a Manistee Iron Works evaporator. Certainly it was not chargeable with such knowledge when there was no uniform practice to operate evaporators in sets, and when there was in fact no other evaporator on the premises when the contract was made, and it rested entirely with defendants whether there would ever be another on the premises (the Manistee evaporator had not been constructed when this contract was made), and, if so, when it would be erected and ready for operation, as indeed it depended on them as to when plaintiff's evaporator would be ready for operation, even though the parts were furnished promptly. In exercising their own discretion and choice in these matters—matters not ordinarily encountered—the defendants developed the circumstances from which the damages resulted; but they were not the usual or ordinary circumstances that attend the sale and installation of an evaporator, and hence could only cause special damage.

[3] Another sufficient reason why the damages claimed are not recoverable is that defendants did not give notice of the breach of the contract now complained of within a reasonable time after it occurred. Section 49 of the Uniform Sales Act of Michigan declares that "if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable." Comp. Laws 1915, § 11880. The default in delivery now relied upon occurred on April 20, 1923. Defendants knew that this default had occurred, but made no complaint of it at that time. Deliveries were completed, and on demand from defendants changes in the evaporator were made from time to time, and the evaporator finally accepted in July of 1924. During that time no

notice of default was ever given the plaintiff. The telegram of February 15, 1924, offered, but not admitted, in evidence, was not such notice. It was more than a year after the breach, and several months after the evaporator was finally accepted, before notice was given, and it was then given in response to a demand for the payment of the balance of the purchase price. It was then too late, in our opinion, to assert the claim.

[4] The judgment below included an item of $4,334.28, balance due on the contract price of $13,650 for the brine purifier. Defendants had paid $9,315.72 on the purifier. The contract under which it was sold guaranteed that it would work satisfactorily. It did not work satisfactorily, and plaintiff, recognizing that fact, offered through its representative to take it back. This offer was accepted, but the following day something was said by the representative about arranging to have it returned, and Rademaker, one of the defendants, said he thought it should be left where it was; that, while it had no value, it should be left as well as other materials to satisfy Mr. Ruggles, the other partner. The representative of plaintiff said he could not agree to that, but nothing further was done. The purifier was never returned, but the action of neither party may be said to have put the other in default, as plaintiff did not again demand its return, and defendants did not offer to return it, and demand the return of that part of the purchase price which they had paid. It results, therefore, that the offer to return and its acceptance are to be treated as effective, and hence that defendants are entitled to recover what they paid on the purifier and that it should be returned to the plaintiff.

[5] Defendants' claim of $2,760, the price of the No. 100 preheater, should also be allowed. This preheater was a part of the equipment to be furnished under the evaporator contract, but was not furnished. When the purifier was sold to defendants, How, the seller, took into consideration the fact that the preheater had not been furnished, and reduced the cost price of the purifier, accordingly, to $13,650. As this contract is to be rescinded, the $2,760 should be credited upon the balance due on the purchase price of the evaporator.

It results from the foregoing that the judgment will be affirmed if plaintiff, within 30 days, shall file in this court proof by certified copies that he has filed in the lower court a remittitur in the sums of $9,315.73, $4,334.28, and $2,760, with interest from the date that interest was computed in the judg-

ment on the balance of the purchase price for the evaporator; otherwise, it will be reversed.