**APPLIED DATA PROCESSING, INC.**

v.

**BURROUGHS CORPORATION.**

Civ. No. 14156.

United States District Court,
D. Connecticut.

April 24, 1975.

See also, D.C., 58 F.R.D. 149.

William J. Egan, New Haven, Conn., for plaintiff.

Lawrence W. Iannotti, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION ON SEVERED ISSUE CONCERNING DAMAGES

NEWMAN, District Judge.

This diversity action for breach of contract and tort arises out of the leasing of data-processing equipment by defendant Burroughs Corporation ("Burroughs") to plaintiff Applied Data Processing, Inc. ("ADP"). ADP alleges that the equipment failed to function properly and claims damages for breach of express and implied warranties, and for tortious misrepresentation. In accordance with the pre-trial order of January 22, 1974, the severed issue now before the Court is whether ADP may recover certain elements of the damages it seeks.

ADP has submitted a set of "allegations of fact" concerning the transaction, in which it describes the dealings between the parties and details the elements of injury for which it now claims damages. The parties have stipulated that the Court will consider ADP's entitlement to damages on the basis of these allegations as if Burroughs had moved to dismiss for failure to state a claim on which relief may be granted,[1] Fed.R. Civ.P. 12(b)(6). If the Court determines that any of the items of damage claimed by ADP are recoverable under any of the counts of the complaint, ADP

1. The parties agree that Michigan common law governs the contract claims, that the Uniform Commercial Code does not apply, and that Connecticut law governs the tort claims.

will have to establish the underlying facts at trial. If the Court determines that any of the claimed damages are not recoverable, those claims will be withdrawn from the case. The question of liability has been reserved for separate hearing and determination.

According to the allegations, ADP, a Connecticut corporation, operates what is known as a commercial service center, providing electronic data-processing services to commercial clients. Burroughs, incorporated in Michigan, designs, manufactures, installs, leases, and maintains electronic data-processing equipment that is used for commercial purposes. From its inception in 1962, ADP had always used IBM data-processing equipment, and in early 1968, it was using an IBM 360, Model 20 computer system. ADP's business was growing steadily, and it determined that its capacity would have to be increased during 1969. Early in 1968, it therefore began investigating alternative computer systems, focusing mainly on reliability and cost. ADP soon concluded that only IBM and Burroughs manufactured equipment suitable for ADP's needs.

During 1968 and the first part of 1969, ADP had frequent meetings with representatives of Burroughs regarding the leasing of the Burroughs B–2500 system. During these meetings, ADP advised Burroughs of its particular requirements, described the nature of the operations the computer would be required to perform, and defined the level of reliability that would be required of the equipment.[2]

As a result of its preliminary investigations, ADP was "leaning towards" acquiring more sophisticated IBM equipment, rather than switching to Burroughs. All ADP's programs were in the computer language known as "IBM Model 20 BAL," and would be unusable on a Burroughs system; moving to Burroughs equipment would thus require ADP to have all its programs translated into Burroughs "COBAL." This would be an expensive and time-consuming process and would entail retraining ADP's employees. Moving gradually up the IBM line, however, would permit ADP to avoid these costs, because the necessary translations and retraining could be accomplished in the normal course of business.

ADP advised Burroughs of its concern and tentative conclusion, and Burroughs responded by "demonstrating" to ADP that its B–2500 computer was so efficient that the conversion costs "would soon be recovered." Burroughs allegedly represented and warranted that the B–2500 had a larger core capacity and a lower cost than comparable IBM equipment. ADP also alleges Burroughs represented and warranted that the B–2500 was suitable for use in a commercial data processing service center, and that it would be as reliable as certain other specified computers then in service in Connecticut. In general ADP claims Burroughs represented and warranted the equipment as merchantable and fit for the purposes intended by ADP, and that Burroughs either knew or should have known these representations were false. Finally, ADP alleges Burroughs made the representations and warranties for the purpose of inducing ADP to convert from IBM to Burroughs, and that in reliance on Burroughs' representations, ADP entered into a lease agreement with Burroughs on February 24, 1969. Burroughs delivered the B–2500 system to ADP in May 1969, but because of serious malfunctioning Burroughs did not declare it "ready for use," and the rent therefore did not begin to accrue, until October 15, 1969. ADP alleges that this declaration of readiness was false, and that Burroughs either knew or should have known it was false. The time out of service continued to be substantially in excess of that warranted and represented by Burroughs, but Burroughs assured ADP that the difficul-

---

2. "Reliability" is measured by unscheduled downtime beyond that required for preven-

tive maintenance. Allegations, paragraph 27.

ties were all "start-up" problems and would be resolved.

In January, 1969, ADP had begun converting its programs to Burroughs COBAL, and, relying on Burroughs' representations that the problems would be solved, continued this process even after the difficulties became apparent. From late January, 1970, until March 16, 1970, the computer continued to malfunction seriously, and made processing errors, as a result of which some programs had to be rerun entirely. A portion of the time when the computer was running properly was thus wasted. Because of the downtime and errors in processing, Burroughs removed the computer from rental on March 13, and attempted repairs. On April 17 Burroughs claimed that the problems had all been solved and replaced the equipment on rental as of April 15. The problems continued, however, and the B–2500's performance continued to be below that level of reliability constantly warranted by Burroughs. On May 1 ADP terminated its conversion process, which was then substantially complete, and in July Burroughs agreed to an early termination of the lease. On November 1, 1970, the B–2500 was removed from ADP's premises.

With respect to ADP's claims for breach of warranty,[3] the damages alleged may usefully be divided into two classes. The first class includes those expenses ADP incurred in converting from IBM BAL to Burroughs COBAL, including supplies, staff training, labor costs, and software costs (paragraphs 55A, D of the allegations); the cost of transporting the B–2500 to ADP's premises (paragraph 55F); and the cost of electric wiring required to install the B–2500 (paragraph 55G). Each of these expenditures was incurred by ADP only because it was converting to Burroughs equipment; and each expenditure was made in anticipation of, and in reliance on Burroughs' warranties about the performance characteristics of its equipment.

Expenditures of the second class were made not in anticipation of the results warranted, but as a consequence of the warranties' having been breached. Prior to September 1, apparently with knowledge that the Burroughs' lease would be terminated, ADP began renting an IBM Model 30; programs in Burroughs COBAL cannot be run on the Model 30, and ADP therefore had to translate all its Burroughs COBAL programs to IBM COBAL. The cost of such translation is alleged to be less than the cost of updating the old IBM BAL programs. IBM COBAL, however, is less efficient in terms of core utilization than IBM BAL. Had ADP moved up gradually through the IBM line, it would have been able to use the smaller and less expensive Model 25, and would not have needed the Model 30, until January 1, 1972. Finally, those programs remaining in Model 20 BAL had to be translated to Model 30 BAL, an expense that would not have been incurred had ADP been able to use the Model 25, because the necessary adjustments could have been made in the normal course of business.

It is these responses to the breach of warranty that give rise to the second class of damages claimed. These include the costs of converting from Burroughs COBAL to IBM COBAL (paragraph 55B), the cost of converting from IBM Model 20 BAL to IBM Model 30 BAL (paragraph 55C), and the supplies involved in each of the conversions (paragraph 55D). In addition, ADP claims the cost differential between the rental of the Model 30 and the Model 25 from May, 1970, until January 1, 1972 (paragraph 55E), the cost of transporting the B–2500 from ADP's premises back to Burroughs (paragraph 55F), labor costs of rerunning faulty reports (paragraphs 55H, J), wages of personnel idled by the malfunctioning (paragraph 55I), the cost of purchasing outside computer time

---

3. The parties agree that damages for breach of express and implied warranties are measured by the same standards.

(paragraph 55K), and the wages of employees required to deal with customers because of the B–2500's failure to perform as warranted (paragraph 55L).

Burroughs denies that ADP is entitled to recover for either class of expenditures. Its major argument [4] in this regard is that all of these claimed items of damages are "consequential," and as such are excluded by paragraph 8 of the lease.[5] ADP acknowledges the validity of the exclusion clause but denies that any of the damages it seeks are consequential within the meaning of the contract.

Although the Michigan Supreme Court has on at least one occasion enforced a contract provision similar to paragraph 8, Wallich Ice Mach. Co. v. Hanewald, 275 Mich. 607, 267 N.W. 748 (1936); see also Ruggles v. Buffalo Foundry & Mach. Co., 27 F.2d 234 (6th Cir. 1928), neither in Michigan nor elsewhere does the term "consequential damages" have a clearly established meaning. See 5 Corbin, Contracts § 1011, and *compare, e. g.*, Clark v. Ferro Corp., 237 F.Supp. 230, 239 (E.D.Tenn.1964), *with* Monarch Brewing Co. v. George J. Meyer Mfg. Co., 130 F.2d 582 (9th Cir. 1942).

In the absence of a settled rule, it is not surprising that the parties urge widely divergent constructions of the term. Burroughs maintains that in this action "direct" (and therefore recoverable) damages are measured by the difference between the value of the data-processing equipment had it been as warranted, and its value as actually delivered, see, *e. g.*, Monarch Brewing Co.

v. George J. Meyer Mfg. Co., *supra;* Despatch Oven Co. v. Rauenhorst, 229 Minn. 436, 40 N.W.2d 73 (1949), and that all damages that followed the breach are consequential. ADP agrees that consequential damages follow or flow from a breach, but, relying on cases decided under the Uniform Commercial Code, suggests that only those post-breach damages whose valuation is somewhat speculative, such as lost profits, are properly called "consequential." *E. g.*, Council Brothers, Inc. v. Ray Burner Co., 473 F.2d 400 (5th Cir. 1973).

█ The first class of damages described above is clearly not within the exclusion provision; the expenditures were not in any sense incurred as a consequence of the breach, but were instead incurred before the breach occurred and in reliance on the promises of the contract. See 5 Corbin, Contracts § 1035 n. 50. Michigan's courts would award reliance damages in an appropriate case, Brown Brothers Equipment Co. v. State, 51 Mich.App. 448 (Ct.App.), 215 N.W.2d 591 (1974); see also Tross v. Clarke Co., 274 Mich. 263, 264 N.W. 365, 366 (1936), and the allegations ADP makes here compel the conclusion that this is an appropriate case. See 22 Am.Jur.2d, Damages § 159. Burroughs, according to ADP's allegations, was intimately acquainted with the data-processing industry in general and with ADP's needs in particular. Based on that knowledge, Burroughs had warranted that ADP would recoup the costs of converting to its equipment. Burroughs knew the costs would be incurred, and that they would be valueless if Burroughs did not

---

4. Burroughs also argues that termination under paragraph 10 of the lease is the sole remedy permitted by the contract, and in support of its contention cites Lovable Co. v. Honeywell, Inc., 431 F.2d 668, 676 (5th Cir. 1970). The passage in *Lovable Co.* is not at all clear, and in any event, it is dictum. The Court had already held that defendant had not breached its obligations under the lease. More importantly, however, the Burroughs-ADP lease was a printed form drawn by Burroughs. In the absence of compelling evidence the Court is not prepared to con-

clude that the parties intended paragraph 10 to be ADP's sole remedy for breach.

5. 8. *Damages* a. Lessor shall not be liable for any damages caused by delay in delivery. Lessor shall not be liable for any damages caused in rendering of repair hereunder, arising from any cause beyond Lessor's control. *Lessor shall not in any event be liable for indirect or consequential damages.*
[Emphasis supplied]
b. * * *

fulfil its obligations. There is no doubt that ADP acted reasonably in relying on the contract and in incurring those expenses. *Cf.* Feldman v. Wear-U-Well Shoe Co., 191 Mich. 73, 157 N.W. 395, 399 (1916). See also, 5 Corbin, Contracts § 1035, text at n. 44 and text following n. 50.5. ADP may recover as reliance damages those expenses, including supplies, involved in converting from IBM Model 20 BAL to Burroughs COBAL that were incurred after February 24, 1969 (paragraphs 55A, D), and those expenses claimed in paragraphs 55F, G.

■■ With respect to the items comprising the second set of damages claimed, the question is more difficult to resolve. The only firm starting point to be derived from the case law is that the commercial context in which a contract is made is of substantial importance in determining whether particular damages flowing from its breach are direct or consequential. *Cf.* Otis Elevator Co. v. Standard Const. Co., 92 F.Supp. 603, 608 (D.Minn.1950).[6] It may also be said at the outset that no rule limits direct damages to the difference between the value of the equipment as warranted and its value as delivered. See, *e. g.*, Ruggles v. Buffalo Foundry & Mach. Co., *supra;* Clark v. Ferro Corp., *supra.* See also, Sinker, Davis & Co. v. Diggins, 76 Mich. 557, 43 N.W. 674 (1889).

■ In Ruggles v. Buffalo Foundry, *supra*, the Court explained the distinction between "general" and "special" damages while construing a clause that prohibited recovery of "any special, indirect, or consequential damages . . .." 27 F.2d at 235. That Court appears to have equated consequential and special damages, an equation endorsed by Corbin[7] and one to which this Court will adhere.

> The distinction between general and special damages is not that one is and the other is not the direct and proximate consequence of the breach complained of, but that general damages are such as naturally and ordinarily follow the breach, whereas special damages are those that ensue, not necessarily or ordinarily, but because of special circumstances. 27 F.2d at 235.

See also Saint Line v. Richardson, W. & Co., [1940] 2 K.B. 99.

The Court's first task in the present case is thus to decide whether the dam-

---

6. In *Otis* a hospital corporation sought damages for profits lost when it was unable to rent some of its rooms because of defendant's failure to install elevators by the date warranted. The contract involved contained a clause excluding consequential damages, and the Court held that the lost profits sought were on the facts of the record before it excluded by that clause. The Court pointed out, however, that its decision might well have been different if the defendant had contracted to construct the entire building, instead of obligating itself only to install elevators. 92 F.Supp. at 608.

7. 5 Corbin, Contracts § 1011 n. 15 and preceding text. Two factors suggest that the equation, although perhaps not inevitable, is especially appropriate here. First, in drafting the contract, Burroughs did not content itself with excluding consequential damages; it also felt it necessary to exclude recovery for damages caused by delay in delivery. If Burroughs had intended the word "consequential" to encompass all post-breach damages, this additional exclusion would have been unnecessary. More significant is the description of the negotiating process contained in the allegations. Burroughs, in order to reach agreement with ADP, warranted that its equipment would meet the needs of ADP's operation. This warranty was instrumental in concluding the negotiations, and, absent clearly contrary language, the Court is not willing to conclude that ADP gave up its right to sue for those damages that both parties knew commonly follow breaches of similar agreements. The negotiations suggest, rather, that the parties intended to make those damages the limit of Burroughs' potential exposure, and to bar imposition of additional damages sustained by ADP because of unique or special features of its operation. It is reasonable to conclude that the parties agreed on this allocation of the risk that the equipment might fail to perform; it provides Burroughs with sufficient information to establish a stable price structure and does not deprive the lessee of remedies that affect his major concerns in the contract.

ages claimed by ADP on the contract counts (in excess of the reliance damages) were, in an objective sense, foreseeable. The Court must then inquire, with regard to those damages found to be foreseeable, whether they are in that category because such damages ordinarily follow the breach of a contract such as the lease agreement entered into by ADP and Burroughs, or only because Burroughs had knowledge of special circumstances. Those damages in the latter class are not recoverable because of the consequential damages exclusion clause of the lease.

Burroughs' claim that none of the claimed damages was foreseeable is unconvincing, especially when considered in light of the standards of Fed.R.Civ.P. 12(b)(6). Paragraph 56 of the allegations, in a form that is conclusory but nevertheless adequate, charges that Burroughs

> knew, or had reason to know, that failure of the B–2500 to perform as represented and warranted would proximately result in each of the items of damage listed above which damages were within the contemplation of the parties at the time the contract was entered into and for which Burroughs expressly and impliedly agreed to be liable.

While there may be substantial problems of proof at trial, the allegation is certainly a sufficient claim of foreseeability.

■ Of the damages not allowed on the reliance theory, the costs of removing the B–2500 from ADP's premises (paragraph 55F), and those claimed in paragraphs 55H, I, J, K, and L are direct. Burroughs needed no knowledge of special circumstances to understand, for example, that ADP would remove the equipment if it proved defective, or that ADP would have to pay the wages of employees required to rerun improperly processed reports. Burroughs similarly needed no knowledge of special circumstances to know that ADP would have to pay the wages of workers idled by the equipment's unscheduled downtime, and that it would have to purchase outside computer time if the Burroughs equipment were unable to handle ADP's obligations to its customers. A reasonable man acquainted with the circumstances ordinarily attending transactions such as this one would know that these injuries would ordinarily follow a breach of warranty such as that alleged here.

All of the remaining items of damages claimed are foreseeable, consequential damages and would be recoverable but for paragraph 8 of the lease. Included in this category are the expenses of converting Burroughs COBAL to IBM COBAL; the expenses of converting IBM Model 20 BAL to IBM Model 30 BAL; the cost of supplies involved (except for that portion already allowed); and the cost differential between the rental of the IBM 360, Model 30 computer and the IBM 360, Model 25, between May, 1970, and January, 1972. Each of these was foreseeable only because Burroughs is alleged to have known the peculiar details of ADP's business and the course it would follow if the Burroughs equipment did not perform as warranted. Paragraph 8 accordingly bars ADP from recovering damages claimed in paragraphs 55B, C, D (except for that portion already allowed), and E. [8]

■■ Recovery of damages for misrepresentation requires much less discussion. The parties are in substantial agreement about the appropriate mea-

---

**8.** ADP contends that after the lease was signed the parties entered into another agreement. It argues that Burroughs promised to make the system functional, in exchange for ADP's promise to forbear from exercising rights under the agreement or at law, and that the exclusion clause in the written lease has no application to the subsequent oral contract. Neither the complaint nor the allegations provides any basis for concluding that ADP ever agreed to yield its rights to any remedy.

sure of damages.[9] If ADP is able to establish liability for fraudulent misrepresentation, it would be entitled to recover the difference between the value of the equipment had it been as represented and its value as installed, together with "such consequential damages, if any, as resulted from the fraudulent" misrepresentation, Franchey v. Hannes, 155 Conn. 663, 667, 237 A.2d 364, 366 (1967). To be recoverable the consequential damages must be the direct and proximate result of the misrepresentations, Morrell v. Wiley, 119 Conn. 578, 178 A. 121 (1935), and those results are proximate "which must be presumed to have been within the contemplation of the defendant as the probable consequence of his fraudulent representations." Kornblau v. McDermant, 90 Conn. 624, 632, 98 A. 587, 591 (1916).

■ The expenses claimed in paragraph 55A of the allegations are recoverable in tort as one element of the difference between the value of the equipment as warranted and its value as delivered. Burroughs represented that these conversion expenses would be recovered because of its equipment's efficiency, and the failure of the equipment to perform as represented diminished its value at least by this sum. *Cf.* Franchey v. Hannes, *supra.*

■ In addition, those damages characterized as "direct" on the contract claim are also recoverable in tort. The expenditures were the direct result of the breach and would not have been incurred except for ADP's having relied on Burroughs' misrepresentations. The allegation that these damages were in the contemplation of the parties satisfies the proximate cause requirement, Kornblau v. McDermant, *supra.*

Recovery in tort is also appropriate for those damages excluded on the contract claim as consequential. Burroughs is alleged to have been aware of special

circumstances making these expenses the likely consequence of its breach, and they are thus alleged to have been contemplated by Burroughs at the time the parties signed the lease.

---

9. Burroughs does not claim that the lease's exclusion clause is of any relevance to the

tort claims. *Cf.* Ford v. Dubiskie and Co., Inc., 105 Conn. 572, 576, 136 A. 560 (1927).